UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOSEPH J. COYER,
JANET J. COYER,

      CASE NO. 10-CV-14339

   *Plaintiffs*,

      DISTRICT JUDGE THOMAS L. LUDINGTON
v.      MAGISTRATE JUDGE CHARLES E. BINDER

HSBC MORTGAGE SERVICES,

   *Defendant*.
                            /

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**
(Doc. 2)
**AND PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER**
(Doc. 10)

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs' motions be **DENIED**.

**II.   REPORT**

   **A.   Introduction**

By order of U.S. District Judge Thomas L. Ludington, this case was referred to the undersigned magistrate judge for general case management pursuant to 28 U.S.C. § 636(b). (Doc. 14.) Before the Court are the above-entitled motions. Defendant filed a response to the motions on December 3, 2010. (Doc. 13.) A hearing was held on December 7, 2010, and the motions were taken under advisement. The motions are therefore ready for Report and Recommendation.

**B.     Background**

On October 28, 2010, Plaintiffs Joseph and Janet Coyer (hereafter "Plaintiffs") filed a 26-page complaint against Defendant HSBC Mortgage Services (hereafter "Defendant" or "HSBC"). On the same day, they also filed another document entitled "Petition for Preliminary Injunction" (Doc. 2); the content of that 26-page document is identical to the complaint.

The complaint alleges that Defendant, "acting in concert and collusion with others, induced [Plaintiffs] to enter into a predatory loan agreement with Defendant." (*Id*. at 1.)  The complaint contains wide-ranging allegations against the real estate and mortgage banking industries and alleges the following "causes of action":  (1) breach of fiduciary duty; (2) negligence/negligence per se; (3) common law fraud; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; and (6) intentional infliction of emotional distress.[1]  (Compl., Doc. 1 at 19-23.)  Although the complaint does not specifically state that Plaintiffs' home is the subject of foreclosure proceedings, Plaintiffs' statement that "Lender has no legal standing to bring collection or foreclosure claims against the property" (*id*. at 6) and Plaintiffs' prayer for "a Mandatory Injunction requiring re-conveyance of the subject property" (*id*. at 7) seem to indicate as much.  Relief in the form of compensatory damages, consequential damages, and quiet title are also sought.  (*Id*.)

On November 29, 2010, Plaintiffs filed a Petition for Temporary Restraining Order seeking an injunction of the "Trustee Sale" of their home reportedly scheduled for December 10, 2010. (Doc. 10 at 3.)  Plaintiffs assert that they will suffer an immediate and irreparable injury if the injunction does not issue, because "once the foreclosure sale has taken place Plaintiff will suffer

---

[1]The Court notes that only one federal claim is raised, the claim brought pursuant to the Truth in Lending Act.  Federal Court supplemental jurisdiction of Plaintiffs' remaining pendent claims brought under Michigan statutory and common law is therefore discretionary pursuant to 28 U.S.C. § 1367.

the complete loss of the property as Defendant will sell the property to a third party who will have a right to possession without regard to the claims Plaintiffs have against Defendant." (*Id*. at 1.) Plaintiffs also claim that there is a substantial likelihood that they will prevail on the merits of their case and that the threatened harm to Plaintiffs outweighs the threatened harm to Defendant. (*Id*. at 1-3.)

Defendant HSBC submitted an expedited response to Plaintiffs' motions. (Doc. 13.) Defendant asserts that this action is nothing but an attempt to harass Defendant and delay the foreclosure process. Defendant informs the Court that the documents filed by Plaintiffs are taken from the Internet and that identical documents have been filed in actions across the country "for the purpose of impeding valid foreclosure proceedings." (*Id*. at 1.) Defendant referred the Court to another case pending in this district: *Geans v. Oxford Bank*, E.D. Mich. Case No. 10-13160. Indeed, after comparing the documents filed in both cases, other than a few lines where Plaintiffs have inserted dollar amounts that correspond to their note, mortgage, and closing costs, the complaint in this case is identical to the complaint in that case.

Defendant asserts that no relief should be granted to Plaintiffs where none of their pleadings or motion papers assert any facts or occurrences specific to them, but rather are conclusory statements about the mortgage loan industry in general. Defendant further states that courts across the country, when presented with the documents filed in this case, have declined to grant injunctive relief. (*Id*. at 2.)

Defendant's response provided the Court with some of the factual background that Plaintiffs' documents omitted. Defendant states that Plaintiffs entered into a mortgage agreement with Option One Mortgage Corporation ("Option One") on June 24, 2005, for the amount of $182,000.00. (*Id*.) The subject property is located at 878 E. Prevo Road, Linwood, Michigan

48650.  Defendant attached a copy of the mortgage to its response.  (*Id*. at Ex. C.)  Defendant HSBC states that it had no involvement whatsoever with the origination of Plaintiffs' mortgage.  Instead, Defendant purchased the mortgage sometime thereafter on the secondary market.  Defendant asserts that in February 2010, Plaintiffs stopped making their mortgage payments to Defendant, and Defendant therefore has begun foreclosure proceedings pursuant to the "power of sale" clause contained in the mortgage.  Defendant states that the sheriff's sale is scheduled to occur on December 10, 2010, following which Plaintiffs will have six months to redeem the property pursuant to Michigan statutory law.  (*Id*. at 2.)

Defendant asserts that Plaintiffs cannot demonstrate a likelihood of success on any of their claims, and therefore their motions for injunctive relief should be denied.  (*Id*. at 4.)  Defendant also contends that Plaintiffs cannot demonstrate that irreparable harm will occur if no injunctive relief is given prior to the sheriff's sale on December 10, 2010, because a sheriff's sale does not remove the Plaintiffs from the property, but merely triggers the commencement of the six-month period during which Plaintiffs may still redeem their property.  (*Id*. at 9.)

Defendant further argues that it would be harmed and the public interest would likewise be harmed by the issuance of an injunction based upon these generic pleadings, because it would encourage more borrowers to attempt to stall foreclosure proceedings by copying and filing such documents.  (*Id*. at 10.)

Finally, Defendant requests that if the Court is inclined to issue an injunction, Plaintiffs be required to post a bond in the amount of at least $25,000.  (*Id*. at 11.)

    **C.**    **Oral Argument**

The Court heard oral argument on December 7, 2010.  Plaintiff Joseph Coyer stated that, prior to filing suit, he obtained a "forensic audit" of his mortgage documents, and that the result

of such "audit" was the identification of numerous errors in the documents. Plaintiff also took issue with Defendant's characterization of his pleadings as "cookie-cutter documents," pointing out that most legal documents contain standard language. Plaintiff further explained that, to his knowledge, no foreclosure proceedings have taken place in state court. Plaintiffs became aware of the sheriff's sale scheduled to occur on December 10, 2010, when a newspaper clipping taped to their door informed them of the sale.

Counsel for Defendant confirmed that Michigan's statutory nonjudicial foreclosure process, which allows for notice by advertisement if the mortgage contains a power of sale clause, is being followed in this case. *See* Mich. Comp. Laws § 600.3204(1).

Plaintiffs brought several documents to the hearing, seeking to have them admitted as exhibits. Counsel for Defendant having no objection, the Court received and marked the documents. (Docs. 14-22.) Plaintiffs' Exhibit 1 is a letter Plaintiffs received from an HSBC customer service representative in October 2010. Plaintiffs point to the portion of the letter stating, "Because you received a discharge under the United States Bankruptcy Code, you have no personal obligation under the note, or for any of the amounts shown above." Counsel for Defendant countered with an exhibit (Doc. 22, Defense Exhibit D) from Plaintiffs' bankruptcy case showing that Plaintiffs reaffirmed the mortgage debt to HSBC.

Plaintiffs' Exhibit 2 (Doc. 15) is another copy of the original mortgage (Defendant had already made the mortgage a part of the record by attaching a copy to its response, Doc. 13 at Ex. C). The Court notes that the first page of the mortgage does contain a "power of sale" clause. (Doc. 15 at 1.) Plaintiffs' Exhibit 3 is a copy of a June 2005 Assignment of Mortgage whereby Option One Mortgage Corporation assigned the mortgage to Mortgage Electronic Registration Systems, Inc. (MERS). (Doc. 16.) Plaintiffs' Exhibit 4 is a document entitled "Constructive Legal

Notice of Lawful Debt Validation Demand" dated February 2010 prepared by Plaintiffs and apparently sent to Option One Mortgage Company and HSBC Mortgage Services.  (Doc. 17.) Plaintiffs Exhibit 5 is a "Notice of Default" prepared by Plaintiffs in March 2010 that is addressed to Option One and HSBC wherein Plaintiffs state that they are released from all mortgage obligations because Option One and HSBC failed to respond to their Debt Validation Demand. (Doc. 18.)  Plaintiffs' Exhibit 6 is entitled "Notice of Removal," and is a document prepared by Plaintiffs in March 2010 "removing and terminating" Option One and HSBC from taking any action with regard to the property.  (Doc. 19.)  Plaintiffs' Exhibit 7 is a "Notice of Revocation of Power of Attorney" prepared by Plaintiffs in March 2010 and addressed to Option One and HSBC stating *inter alia* that they "revoke, rescind, and terminate all our signatures relating to any/all said deeds, notes, and agreement from their inception."  (Doc. 20.)  Plaintiffs' Exhibit 8 is a copy of an August 2010 Assignment of Mortgage whereby Mortgage Electronic Registration Systems, Inc. (MERS) assigned the mortgage to HSBC Mortgage Services, Inc.  (Doc. 21.)

Counsel for Defendant responded to Plaintiffs' statements by reiterating that despite the existence of standardized legal forms, litigants are nonetheless required to customize the forms by adding the specific factual bases for their claims, which Plaintiffs did not do.  Counsel further reiterated that Defendant HSBC was not a party to Plaintiffs' original signing of their note and mortgage, and therefore all claims relating to defects in the loan application process or defects in the documents themselves are irrelevant in an action against Defendant HSBC. Otherwise, counsel for Defendant relied on the arguments made in the response to the injunctive motions (Doc. 13), which will be discussed below.

### D. Motion Standards

Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held. Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The same factors are considered in determining whether to grant a request for either a temporary restraining order or a preliminary injunction. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Certified Restoration*, 511 F.3d at 542.

### F. Analysis & Conclusion

Plaintiffs bear the burden of demonstrating entitlement to preliminary injunctive relief and the burden is substantial.

#### 1. Likelihood of Success on the Merits

Courts have long held that, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). Accordingly, the Court will address the likelihood of success on the merits with regard to each cause of action brought in the complaint.

With regard to Plaintiffs' claim of breach of fiduciary duty, Defendant argues that the law is clear that in an arm's length transaction, the mortgagee does not owe any fiduciary duty to the mortgagor. (Doc. 13 at 4-5.) I suggest that Defendant is correct. Under Michigan law, "a

fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Teadt v. Lutheran Church Missouri Synod*, 603 N.W.2d 816, 823 (Mich. 1999). Generally, no fiduciary duties arise within the lender-borrower context. *Farm Credit Servs. of Mich.'s Heartland, P.C.A. v. Weldon*, 591 N.W.2d 438, 447 (Mich. Ct. App. 1999). Plaintiffs have not alleged that any special circumstances exist in this case which override the general rule that a lender does not owe fiduciary duties to a borrower. Accordingly, I suggest that Plaintiffs are not likely to succeed on this claim.

With regard to Plaintiffs' claim of negligence, Defendant asserts first that the claim is time-barred because negligence actions have a 3-year statute of limitations under Michigan law, and the mortgage in this case was entered into in June 2005. Alternatively, Defendant contends that Plaintiffs cannot succeed because Plaintiffs' negligence claims all relate to the inception of their mortgage (for example, Plaintiffs claim that they did not receive the required disclosures prior to signing and that certain fees were fraudulently charged) and Defendant had nothing to do with that transaction. Defendant states that it "could not have breached any duty to Plaintiffs because HSBC was not involved in the transaction until well after Plaintiffs executed the loan documents and agreed to the mortgage." (*Id*. at 6.) I suggest that Defendant is correct. The negligence claims appear to relate to the documents Plaintiffs received prior to and at the time of closing on their note and mortgage. Indeed, Plaintiffs' Exhibit 7 states that Plaintiffs discovered various instances of fraud, misrepresentation and nondisclosure with regard to their "Loan, Trust Deed, and Security Agreement records . . . ." (Doc. 20.) Because Defendant HSBC had no involvement with the transaction between Option One and Plaintiffs that resulted in those documents, I suggest that Plaintiffs' are not likely to succeed on this claim.

With regard to Plaintiffs' fraud claims, Defendant asserts that Plaintiffs have not set forth any alleged false misrepresentations on which they relied when they signed the mortgage, and even if they had, since Defendant HSBC was not involved in the origination of the mortgage, they cannot be held liable. (*Id*. at 7.) For the same reason as the negligence claim – the fact that HSBC was not involved in the transaction – I suggest that Plaintiffs are not likely to succeed on their fraud claim in this case against HSBC.

With regard to Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing, Defendant asserts that Plaintiffs cannot succeed on the merits because Michigan does not recognize such a cause of action. (*Id*.) I suggest that Defendant is correct. "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale v. Waste Management of Michigan, Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006). Therefore, I suggest that Plaintiffs are not likely to succeed on this claim.

With regard to Plaintiffs' claim of violations of the Truth in Lending Act, Defendant contends that Plaintiffs only make a conclusory statement that such violations occurred without setting forth any factual averments. Second, Defendant points out again that since TILA deals with the disclosures made prior to the time of entering into the loan, a time at which HBSC had no involvement, Plaintiffs cannot succeed. Finally, Defendant points out that TILA claims are subject to a one-year statute of limitations. (*Id*. at 8.) I suggest that Defendant is correct. TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions (TILA § 1640). The facts underlying Plaintiffs' TILA claim are not clearly set forth in the complaint, but in their motion for injunctive relief, Plaintiffs allege that the lender, loan broker, and appraiser either gave false information to Plaintiffs or failed to give full disclosure of pertinent information in order to "induce" Plaintiffs

to accept an overpriced loan. (Doc. 10 at 2.) Thus, the TILA claims stem from the disclosures before and at the time of the signing of the note and mortgage, a time when HSBC was not involved. Accordingly, I suggest that Plaintiffs are not likely to succeed on this claim against HSBC.

Finally, with regard to Plaintiffs' claim of intentional infliction of emotional distress, Defendant asserts that Plaintiffs cannot claim that its conduct rose to the level of being outrageous and extreme, where Defendant's only conduct was to purchase the loan on the secondary loan market and then follow the foreclosure procedures under Michigan law when Plaintiffs stopped making payments. (*Id*. at 8-9.) Once again, I suggest that Defendant is correct. "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. Ct. App. 1995). Plaintiffs have not come forward with allegations, let alone evidence, of such extreme conduct on the part of Defendant HSBC. Therefore, I suggest that Plaintiffs are unlikely to succeed on the merits of this claim as well.

    **2.**    **Other Factors**

The remaining factors are whether Plaintiffs would suffer irreparable injury without the injunction, whether issuance of the injunction would cause substantial harm to others, and whether the public interest would be served by the issuance of the injunction. *Certified Restoration*, 511 F.3d at 542.

Plaintiffs claim that issuance of the injunction "would not adversely affect the public interest and public policy because there are already a great number of empty houses with the current residential foreclosure mess. Adding more will simply increase the burden on the local

neighborhood as it will create opportunity for vandalism and other criminal activity." (Doc. 10 at 3.) Plaintiffs assert that they will be irreparably injured if the sale is allowed to proceed because "once the foreclosure sale has taken place Plaintiff will suffer the complete loss of the property as defendant will sell the property to a third party who will have a right to possession without regard to the claims Plaintiff has against defendant." (*Id.* at 1.)

Defendant counters that Plaintiffs cannot demonstrate that irreparable harm will occur because a sheriff's sale does not remove the Plaintiffs from the property, but merely triggers the commencement of the six-month period during which Plaintiffs may still redeem their property. (*Id.* at 9.) Defendant further argues that it would be harmed and the public interest would likewise be harmed by the issuance of an injunction, because it would encourage more borrowers to attempt to stall foreclosure proceedings by copying and filing such documents from the Internet. (*Id.* at 10.)

Contrary to Plaintiffs' assertion, Michigan law provides that a "purchaser's deed is void" if the mortgagor redeems the premises during the redemption period. Mich. Comp. Laws § 600.3240(1). Furthermore, Defendant stated during oral argument that eviction proceedings would not occur until the end of the redemption period, and only if the property is not redeemed. Therefore, Plaintiffs' assertions of irreparable harm and public policy concerns are not supported in law.

### 3.     Conclusion

Accordingly, because the relevant factors weigh in favor of Defendant HSBC and against the extraordinary remedy of enjoining the sheriff's sale, I suggest that Plaintiffs' motions for injunctive relief be denied.

**III.   REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  FED. R. CIV. P. 72(b)(2).  *See also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                s/ *Charles E Binder*
                                                CHARLES E. BINDER
Dated: December 8, 2010                     United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Jennifer Newby and Francis Ortiz; at their request, served by email on the Plaintiffs; and served on District Judge Ludington in the traditional manner.

Date:  December 8, 2010               By     s/*Jean L. Broucek*
                                                       Case Manager to Magistrate Judge Binder