

```
1   JOSEPH J & JANET M. COYER
2       Address:      878 E. Prevo Road
3   City, State, Zip: Pinconning, Michigan 48650
4   Daytime Phone:    989-225-0952
5   Representing Self, Without a Lawyer
```

**FILED**

**DEC 2 1 2010**

**U.S. DISTRICT COURT
BAY CITY, MICHIGAN**

UNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF MICHIGAN**

**Joseph J & Janet M Coyer**
Plaintiff

Vs.                                                Case NO.          **10-CV-14339**

                                          DISTRICT JUDGE THOMAS L. LUDINGTON

**HSBC Mortgage Services**
**Defendant**                              **MAGISTRATE JUDGE CHARLES E BINDER**

### VERIFIED RESPOSE TO MAGISTRATE'S REPORT

### ON HEARING HELD DECEMBER 07,2010

COMES NOW Plantiffs Joseph J. Coyer and Janet M. Coyer, to file their Response to Recommendations for MOTION FOR PRELIMINAIRY INJUNCTION (doc.2) AND MOTION FOR TEMPORARY RESTRAINING ORDER (doc.10) As we OBJECT TO THE FINDINGS OF THE COURT.

### PARTIES

(1)   Plaintiffs are Joseph J Coyer & Janet M Coyer, 878 E . Prevo Road, Pinconning Mi. 48650, hereinafter referred to as the "Plaintiff."

(2)   Currently known defendant is HSBC MORTGAGE SERVICES

### MEMORANDUM OF POINTS

(3)   Defendants Claim No Irreparable Harm; Plaintiffs will add now evidence to the contrary. Plaintiffs are Legal Guardians of their Thirteen year old Granddaughter who has lost both

1  parents and would also louse her home as trials can last far beyond the six month redemption
2  period.
3      (4)   Plaintiffs assert that on the same basis because Callie M. Coyer is a ward of the
4  State irreparable harm will befall her in the manner of psychological damage if she is forced to
5  move Which would certainly be harm to others.
6      (5)   Plaintiffs assert that it would further be in the public's best interest to grant the
7  Temporary Restraining Order and Preliminary Injunction on the basis that Defendant has not
8  Properly filed FORECLOSURE BY NOTICE as specified in MICHIGAN LEGISLATURE-
9  Section 600.3204 Foreclosure by advertisement;   Sec.3204 (1)Subject to subsection (4) ,a party
10 may foreclose a mortgage by advertisement if ALL of the following circumstances exist: See Exibit
11 9 for entire rules. Defendants violated rule (1) (b) An action or proceeding has not been instituted ,
12 at law, to recover the debt secured by the mortgage or any part of the mortgage; Clearly there is a
13 proceeding pending.  (3) If the party foreclosing a mortgage by advertisement is not the original
14 mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing
15 the assignment of the mortgage to the party foreclosing the mortgage. This is not possible because
16 as HSBC has stated they purchased Plaintiffs mortgage on the secondary market. Plaintiffs further
17 Hold as evidence Exibits 4 thru 8 as evidence HSBC MORTGAGE SERVICES has no standing to
18 enforce this foreclosure.
19     .
20     (6)   Plaintiffs exercised their <u>legal</u> right, as defined under Truth-In-Lending and
21 Regulation Z, to rescind the loan in March, 2010 by sending the following documents:
22     • Qualified Written Request
23     • Notice of Default
24     • Revocation of Power of Attorney of Attorney
25     • Notice of Right to Cancel
26     • Notice of Removal of Trustee
27     • Notice of Signature Revocations
28     • Demand for Validation of the Alleged Debt (per FDCPA)
29     • Demand for Audits of the Entire Account
30     (7)   The Congress of the United States intended to make rescission remedy available in
31 ALL instances where prohibited conduct occurs in the course of the credit transaction.

1  (8) The above mentioned statements of facts are not an exhaustive list, as other violations may be uncovered through discovery.

3  (9) Under the Federal Rules of Civil Procedures, it may be sufficient to plead that the Truth-In-Lending Act ("TILA") has been violated. **Fed.R.Civ.P. 8(a))**.

5  (10) Specific violations do not necessarily have to be alleged with particularity. _Brown v. Montgagestar, 194 F. Supp. 2d473 (S.D.W.Va. 2002)_; _Herrara v. North & Kimball Group, Inc., 2002 WL 253019 (N.D. Ill. Feb.20, 2002)_; _Staley v. Americorp Credit Corp, 164 F.Supp. 2d 578 (D. Md. 2001)_; _Hill v. GFC Loan Co., 2000 U.S. Dist. Lexis 4345(N.D. Ill. Feb. 15, 2000)_.

9  (11) The principle of equitable tolling <u>DOES</u> apply to TILA rescission since, despite Plaintiffs due diligence, Plaintiff could NOT have reasonably discovered even the possibility of the concealed facts of TILA violations until Plaintiff read the Truth-In-Lending book by the National Consumer Law Center and also the "_Truth-In-Lending Disclosure Requirements, Violations, and Remedies_" paper written by Leslie B. Ng on June 13, 2007. Ms Ng graduated magna cum lauda from the University of Arizona and is currently an associate attorney with the firm of Farah and Farah, P.A. in Jacksonville, Florida. (EXHIBIT 15)

16 (12) **<u>The equitable tolling principles are to be read into every federal statue of limitations unless Congress expressly provides to the contrary in clear and ambiguous language</u>**. (_Rotella v. Wood, 528 U.S. 549, 560-61, 120 S.Ct. 1075, 145 L.Ed. 2d 1047 (2000)_)

19 (13) Since TILA does not evidence a contrary Congressional intent, its statue of limitations <u>MUST</u> be read to be subject to equitable tolling, particularly since the act is to be construed liberally in favor of the consumer.

22 (14) The statute and regulation specify that the security interest, promissory note or lien arising by operation of law on the property becomes automatically void. (**15 U.S.C. § 1635(b); Reg.Z §§ 226.15(d)(1), 226.23(d)(1).**

25 (15) As noted by the Official Staff Commentary, the creditor's interest in the property is "automatically negated regardless of its status and whether or not it was recorded or perfected." (**Official Staff Commentary §§ 226.15(d)(1)-1,** www.fdic.gov/regulations/laws/rules/6500-2280.html

29 (16) Also, the security interest is void and of no legal effect irrespective of whether the creditor makes any affirmative response to the notice. Further, strict construction of Regulation Z would dictate that <u>the voiding be considered absolute and not subject to judicial modification.</u> This

1  required any and all parties of interest to submit canceling documents creating the security interest
2  and filing release or termination statements in the public record. (**Official Staff Commentary §§**
3  **226.15(d)(2)-3, 226.23(d)(2)-3)**
4         (17)    The statute and Regulation Z make it clear that if Plaintiff has the extended right and
5  chooses to exercise it, which is evident in this case, the security interest and obligation to pay
6  charges are automatically voided. See <u>Cf. *Semar v. Platte Valley Fed.Sav & Loan Ass'n.* 791 F.2d</u>
7  <u>699, 704-05 (9th Cir.1986</u> which states "courts do not have equitable discretion to alter substantive
8  provisions of TILA, so cases on equitable modification are irrelevant".
9         (18)    The statute, section **1635(b)** states: "When an obligor exercises his right to cancel. . .
10 . . . , any security interest given by the obligor . . . becomes void upon such rescission".
11        (19)    Plaintiffs assert that effective March 30, 2010 – the date Plaintiff mailed the Notice
12 of Right to Cancel – any alleged debt to Defendants Option one mortgage or HSBC became null
13 and void, in accordance with **Reg.Z §§ 226.15(d)(1), 226.23(d)(1),**
14
15                                    **PREFATORY STATEMENT**
16        (20)    Plaintiff hereby informs this Court of newly discovered material facts relevant to this
17 matter.
18 **A. Deceptive Business Act, Invalid Substitution Of Trustee**
19        (21)    In a contract, both sides have an obligation, a duty to perform.
20        (22)    The Plaintiff has a right to EXPECT and the Defendants have a duty to FIT AND
21 FAIR DEALINGS.
22        (23)    The Plaintiff has a right to EXPECT and the Defendants have a duty to REFRAIN
23 FROM COMMITTING FRAUD BY OMISSION.
24        (24)    Class action lawsuits have already been initiated in California, Tennessee, Georgia,
25 New York, Florida, Kentucky and other states against Mortgage Electronic Registration Systems
26 Inc.'s ("MERS") and MERSCORP, Inc.("MERSCORP") unlawful appointment of Successor of
27 Trustee in violation of the Deed of Trust. This violation invalidates any appointment by MERS and
28 therefore causes the foreclosure process to be VOID, not just voidable, but VOID, *ab initio*, if a
29 Successor Trustee was appointed by MERS, which in this instant case did occur. Courts across this
30 country have upheld that MERS lent nothing, collected nothing and never had anything to do with the

1   cash involved in the transaction.  Since MERS owns nothing, it can assign nothing, and the chain of
2   title has been <u>irretrievably broken</u>.
3     (25) MERS is a nebulous, database-driven entity created by the mortgage industry which
4   has no employees.  It's designed to let lenders swap mortgages electronically without being slowed
5   down by inconvenient courtroom rules. MERS is "Digital Life" for mortgages, an electronic shell
6   game that makes it hard to track the real party behind a loan.
7     (26) The company's own publicly available documents paint the picture of a legal shape
8   shifter that appears before the court as the lender and title holder, then morphs itself into a mere
9   service organization when it's time to take responsibility. Designated officers of the servicers" are
10  "elected" as officers of MERS so that they can act on behalf of their own company while pretending
11  to act for this artificial one.
12    (27) HSBC was only the *servicer* for this loan, but it wanted to score a foreclosure so it
13  pretended that it actually held the title on the loan. That's the kind of deception that becomes vastly
14  easier to carry out using the legal and electronic instruments provided by MERS. Most likely, that
15  was why MERS was created by the financial institutions.
16    (28) The real parties in interest are a group of investors somewhere.  These investors
17    have to come forward and prove not only that they are the parties owed the money, but the
18    actual sums they are owed. Perhaps the investors have already been paid; for example, by
19    insurers on credit default swaps held by the investment pool. The investors are entitled to
20    recover in equity only so much as they are actually out of pocket, not the full amount of the
21    original promissory notes, since they were not parties to those notes and there is no way to
22    re-establish the chain of title.
23  <u>*Indymac Bank v. Bethley*, 880 N.Y.S.2d 873 (2009).</u> The Court is concerned that there may be fraud
24  on the part of plaintiff.  Plaintiff Indymac must have "standing" to bring this action.
25  <u>*Deutsche Bank v. Peabody*, 866 N.Y.S.2d 91 (2008).</u> " . . . . intentionally created fraud in the
26  factum" and withheld from plaintiff… "vital information concerning said debt and all of the matrix
27  involved in making the loan". <u>*Wells Fargo v. Reyes*, 867 N.Y.S.2d 21 (2008).</u> Case dismissed with
28  prejudice, fraud on the Court and Sanctions because Wells Fargo never owned the Mortgage.
29  <u>*Wells Fargo, Litton Loan v. Farmer*, 867 N.Y.S.2d 21 (2008).</u> Wells Fargo does not own the
30  mortgage loan.

1  (29) Fed R. Civ.P. 17(a)(1) requires that"an action must be prosecuted in the name of the real
2  parties in interest." *In re Jacobson, 402 B.R. 359, 365-66* (Bankr. W.D.Wash. 2009); *In re Hwang,*
3  *396 B.R. 757, 766-67* (Bankr. C.D. Cal. 2008).
4      (30) Since it is a material fact that the foreclosure was initiated by an incorrect party that
5           did not have the lawful right to initiate the foreclosure, all of Defendants claims,
6           statements, attestations, and the like in this matter are also void *ab initio*
7        a. Plaintiff asserts and affirms that MERS has no authority to Assign a Deed Of
8           Trust or Mortgage. What follows are exerpts taken from a 170 page deposition
9           transcript this Plaintiff has obtained deposing Mr. William Hultman, Secretary
10          of MERS, Inc. affirming plaintiffs claims. This deposition was taken on April
11          7,2010. Due to the sheer volume, Plaintiff has chosen to not attach the depositin
12          in it's entirety to this response but instead provide the website address where the
13          entire transcript can be read.
14       http://www.scribd.com/doc/36521121/Full-Deposition-of-William-Hultman-
15       Secretary-and-Treasurer-of-MERSCORP

19       **Page 61, line 8**
20       Q. Your testimony, Mr. Hultman, is back in April of 1998 the Board of a
21       predecessor company authorized you to appoint non-members of MERS as assistant
22       secretaries and vice-presidents of a successor corporation?
23       A. No
24       Q. What did the Board do in April of 1998 in terms of authorizing you to appoint
25       anyone to do anything?
26       A. What they authorized me to do was they delegated me the authority to elect
27       persons requested by members to be officers of Mortgage Electronic Registration
28       Systems, Inc.
29       Q. What kind of officers?
30       A. Assistant secretary and vice-president.
31       Q. And your testimony is that is what the Board did in April of 1998?
32       A. Yes
33       Q. And that resolution that was passed back in April of 1998 was by a company that
34       as I understand it went out of existence in June of 1998, is that correct?
35       A. Yes
36       Q. How does a resolution of a company that went out of existence in June of 1998
37       become effective October 23, 2007?
38       A. As I explained to you before, the corporation – the first MERS corporation went
39       out of existence and the second MERS corporation assumed its duties and

| | |
|---|---|
| 1 | obligations and then when the third MERS corporation was formed, that corporation |
| 2 | assumed some of the duties and obligations of the original MERS vis-à-vis the |
| 3 | second MERS.  At that point, what I think I said was that I didn't know where the |
| 4 | documentation was that ratified the original resolution. |
| 5 | **Page 64, line 17** |
| 6 | Q. Was the resolution of April 9, 1998 granting the secretary the power to appoint |
| 7 | certifying officers adopted by the new MERS corporation on or after January 1, |
| 8 | 1999? |
| 9 | A. I don't know |
| 10 | **Page 68, line 19** |
| 11 | Q. Do the assistant secretaries of the corporation report to the secretary of the |
| 12 | corporation? |
| 13 | A. Yes |
| 14 | Q. Do the assistant secretaries – first off, are you a salaried employee of MERS? |
| 15 | A. No |
| 16 | Q. Are you a salaried employee of MERS Corp, Inc.? |
| 17 | A. Yes |
| 18 | **Page 69, line 13** |
| 19 | Q. I thought, sir, there's a company that was formed January 1, 1999, Mortgage |
| 20 | Electronic Registration Systems, Inc.  Does it have paid employees? |
| 21 | A. No, it does not. |
| 22 | Q. Does it have employees? |
| 23 | A. No. |
| 24 | **Page 70, line 7** |
| 25 | Q. In the last five years has MERS had any employeses? |
| 26 | A. No |
| 27 | Q. To whom do the officers of MERS report? |
| 28 | A. The Board of Directors. |
| 29 | **Page 71, line 13** |
| 30 | Q. How many assistant secretaries have you appointed pursuant to the April 9, 1998 |
| 31 | resolution: how many assistant secretaries of MERS have you appointed? |
| 32 | A. I don't know that number. |
| 33 | Q. Approximately? |
| 34 | A I wouldn't even begin to be able to tell you right now. |
| 35 | Q. Is it in the thousands? |
| 36 | A. Yes |
| 37 | **Page 98, line 5** |
| 38 | Q. My question is after you appointed Mr Hallinan an officer of MERS pursuant to |
| 39 | what you claim you had authority to do based on an April 9, 1998 resolution by |
| 40 | MERS one, did the MERS three Board every do anything to ratify your appointment, |
| 41 | Mr. Hultman. |
| 42 | A. No |
| 43 | Q Prior to your appointment of Mr. Hallinan as a MERS officer did the MERS three |
| 44 | Board every do anything to ratify your authority to appoint corporate assistant |
| 45 | secretaries and vice-presidents? |

| | |
|---|---|
| 1 | A. And that's the part that I've said to you, I need to go back and review the |
| 2 | minutes to produce the documentation for that. |
| 3 | Q. And just to clarify, you're uncertain what the answer is presently? |
| 4 | A. I have no recollection either that it's there or it's not there. I need to go |
| 5 | back and look for it. |
| 6 | **Page 121, line 19** |
| 7 | Q. On the attachment . . . the Corporate Resolution, the form Corporate |
| 8 | Resolution, has five numbered paragraphs. Do you see those? |
| 9 | A. Yes |
| 10 | Q. Do any of those numbered paragraphs authorize the certifying officers to |
| 11 | assign a promissory note? |
| 12 | A. No |
| 13 | Q. Has MERS to your knowledge ever authorized a certifying officer to |
| 14 | assign a promissory note? |
| 15 | A. I don't recall. |
| 16 | **Page 122, line 25** |
| 17 | Q. I understand . . . . a promissory note was executed on July 29, 2005 in the |
| 18 | amount of $224,000 and a mortgage giving a security interest to MERS as |
| 19 | nominee for an identified lender was also executed. The mortgage was |
| 20 | recorded with the county clerks office. What is the value of that mortgage to |
| 21 | MERS when it's recorded? |
| 22 | A. I don't understand what you mean by value. |
| 23 | Q. Well, does it have some value to MERS that MERS can sell it for? |
| 24 | A. If you mean can we sell the mortgage and receive consideration or |
| 25 | monetary value, no. |
| 26 | Q. Does MERS report the mortgage as an asset? |
| 27 | A. No. |
| 28 | Q. Does MERS pay any taxes on the mortgage? |
| 29 | A. Well, there are recording taxes paid in certain jurisdictions by the |
| 30 | borrowers. |
| 31 | Q. Other than those recording taxes, does MERS pay any taxes on it as if it |
| 32 | were a property asset? |
| 33 | A. No |
| 34 | Q. When a certifying officer assigns a mortgage, does MERS receive any |
| 35 | money? |
| 36 | A. No. |
| 37 | **Page 132, line 16** |
| 38 | Q. And have the bylaws ever been amended, either set of those bylaws, been |
| 39 | amended to provide for appointment of assistant secretaries by you? |
| 40 | A. As I said, neither set was amended to my knowledge. |
| 41 | **Page 138, Line 9** |
| 42 | Q. Does MERS have an ownership interest in the promissory note? |
| 43 | A If you mean ownership interest in the sense that we are entitled to any of |
| 44 | the proceeds of the promissory note, the answer is no. |
| 45 | **Page 148, line 17** |
| 46 | Q Do you see the words together with the bond, note or other obligation? |

1  A. Yes
2  Q. Does that indicate to you that not only is there an assignment of the
3  mortgage interest, but this document purports to assign an interest in the
4  note?
5  A. It says what it says.
6  Q. And reading it, does it indicate to you that there is an assignment of the
7  note?
8  A. It says what it says.
9  **Page 150, line 10**
10 Q. What was MERS interest in the Ukpe promissory note as of March 14,
11 2008?
12 A. As I answered twice before, I believe, we hold the security interest for the
13 benefit of the note holder as an agent and to the extent that that's an interest,
14 it's an interest.
15 Q. And that's your answer, that's MERS interest in the note?
16 A. In this particular case, yes.
17 Q. And what was the value of that interest in the Ukpes note to MERS?
18 A. If you mean is there a monetary value
19 Q. Yes
20 A –there isn't any.
21
22 (31) Creation of evidence to support a motion for relief from stay, AFTER filing has been found to
23 violate Fed. R. Bankr. P. 9011(b)(3). See *In re Maisel, 378 B.R. 19,22* (Bankr.D.Mass 2007).
24   (1) Defendants state Their claim is based upon a mortgage sold to them on August
25 08,2010 and MERS had no authority to transfer said mortgage defendants have no standing and
26 therefore no claim, and this Court is not in possession of said evidence, this Court may only
27 conclude that the debt does not exist since the evidence does not exist in this Court.
28   (2) There is nothing in American jurisprudence that would allow this Court to conclude
29 facts not in evidence are still facts and use evidence that does not exist to this Court as evidence in
30 Defendants favor.
31   (3) Until such a time as this Court has the evidence that Defendants claim establishes the
32 debt does exist, the debt does not exist to this Court.
33   (4) Absent a debt, the loan does not exist, absent the loan, the Deed Of Trust does not
34 exist, absent a valid Deed Of Trust; therefore the foreclosure documents are nothing more than
35 prima facie evidence of Defendants felonious act of attempting to steal Plaintiff's real property by
36 filing false and/or forged documents into a public office ~~a~~ a felony under **A.R.S. § 39-**
37 **161.**

38                                **SUFFICIENCY OF PLEADING**

1   (5)     A complaint should not be dismissed "unless it appears beyond a doubt that the Plaintiff can
2   prove no set of facts in support of her claim which would entitle her to relief". (*Housley v. U.S. (9th Cir.*
3   *Nev. 1994 35 F.3d 400, 401*)
4   (6)     "All allegations of material fact in the complaint are taken as true and construed in the light
5   most favorable to Plaintiff." (*Argabright v.United States, 35 F.3d 1476, 1479 (9th Cir. 1996)*.
6   (7)     Plaintiff has sufficiently pled that relief can be granted on each and every one of the
7   complaint's causes of action.
8   (8)     The Complaint includes short, plain and precise statements of the basis for relief in
9   accordance with Fed. Rule Civ. Proc. 8(a).
10  (9)     The Complaint contains cognizable legal theories, sufficient facts to support cognizable
11  legal theories, and seeks remedies to which Plaintiff s are entitled. (*Balistreri v. Pacifica Police Dept., 901*
12  *F.2d 696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986)*).
13  (10)    "The legal conclusions in the complaint can and should be drawn from the facts alleged,
14  and, in turn, the court should accept them as such." (*Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir,*
15  *1994)*).
16  (11)    Plaintiff's complaint contains claims and has a probable validity of proving a "set of facts" in
17  support of their claim entitling them to relief. (*Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401*).
18  Therefore, relief as requested herein should be granted.

19                              **DEMAND FOR TRIAL BY JURY**

20  (12)    Plaintiffs assert their rights under the Seventh Amendment to the U.S.
21  Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by
22  jury on all issues.

23

24  **WHEREFORE**, Plaintiffs move this court to Find with Plaintiffs and order in favor of the
25  Plaintiff:
26  ●For rescission of the loan contract and restitution by Defendants to Plaintiff according to
27  proof at trial;
28  ●For disgorgement of all amounts wrongfully acquired by Defendants according to proof at
29  trial;
30  ●For actual monetary damages in the amount as specified in original petitions
31  ●For pain and suffering due to extreme mental anguish in an amount to be determined at

1  trial;
2  •For pre-judgment and post-judgment interest according to proof at trial;
3  •For punitive damages according to proof at trial in an amount equal to $2,898,214.17
4  •For such other relief as the Court deems just and proper.

## VERIFICATION

We, Joseph J Coyer & Janet M Coyer, do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of our knowledge.

*[signature: Joseph J Coyer]*                    *[signature: Janet M Coyer]*
**JOSEPH J COYER**                               **JANET M COYER**
878 E Prevo Rd.                                  878 E Prevo Rd.
Pinconning Mi 48650                              Pinconning Mi. 48650

The persons above, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this document and acknowledged to me that they executed the same in their authorized capacity and that by their signatures on this instrument who is the person who executed this instrument. I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

*[signature]*

**NOTARY PUBLIC IN AND FOR**                     **Notary Seal**
**THE STATE OF MICHIGAN**

Connie L. Howard
Notary Public - State of Michigan
County of Bay
My Commission Expires 9-1-2013
Acting in the County of Bay

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and exact copy of the above has been furnished by U.S. Mail on this ____21st_____ day of December, 2010 to the following:


HSBC MORTGAGE SERVICES
c/o Registered Agent:CT CORPORATION SYSTEM
30600 Telegraph Road
Bingham Farms Mi. 48025




_____
JOSEPH J. COYER



# MICHIGAN LEGISLATURE
95th Legislature Regular Session
Michigan Compiled Laws Complete Through PA 200
and includes 202-212 of 2010
House: Adjourned until Wednesday, December 15, 2010 10:00:00 AM
Senate: Adjourned until Wednesday, December 15, 2010 10:00:00 AM

Home   Register   Why Register?   Login   New!   Help

**Navigation**
Documents
MCL Chapter Index
Chapter 600
Act 236 of 1961
236-1961-32
Section 600.3204

**Legislature**
Bills
Calendars
Committee Bill Records
Committee Meetings
Concurrent Resolutions
Initiatives
Joint Resolutions
Journals
Legislators
Public Acts (Signed Bills)
Resolutions
Session Schedules
Basic Legislative Search
Adv Legislative Search

**Laws**
Often Req Laws
Req Repealed Acts
Basic MCL Search
Advanced MCL Search
Public Act MCL Search
Michigan Constitution
Chapter Index
Executive Orders
Executive Reorganization
Historical Documents
MCL Tables

**More**
Color Picker
Publications
Related Sites
Syndication

## Section 600.3204

linkable   printable

### REVISED JUDICATURE ACT OF 1961 (EXCERPT)
### Act 236 of 1961

**600.3204 Foreclosure by advertisement; circumstances; installments as separate and independent mortgage; redemption; chain of title; commencement of proceedings prohibited; conditions; applicability of subsection (4).**

Sec. 3204.

(1) Subject to subsection (4), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.

(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

(2) If a mortgage is given to secure the payment of money by installments, each of the installments mentioned in the mortgage after the first shall be treated as a separate and independent mortgage. The mortgage for each of the installments may be foreclosed in the same manner and with the same effect as if a separate mortgage were given for each subsequent installment. A redemption of a sale by the mortgagor has the same effect as if the sale for the installment had been made upon an

Case 1:10-cv-14339-TLL-CEB   Document 24   Filed 12/21/10   Page 14 of 14

Bills
Meetings
Laws

Recently Viewed
mcl 600 3204

independent prior mortgage.

(3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

(4) A party shall not commence proceedings under this chapter to foreclose a mortgage of property described in section 3205a(1) if 1 or more of the following apply:

(a) Notice has not been mailed to the mortgagor as required by section 3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for a housing counselor to notify the person designated under section 3205a(1)(c) of a request by the mortgagor under section 3205b(1) has not expired.

(c) Within 14 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed.

(d) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents if requested under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

(e) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

(f) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

(5) Subsection (4) applies only to proceedings under this chapter in which the first notice under section 3208 is published after the effective date of the amendatory act that added this subsection and before 2 years after the effective date of the amendatory act that added this subsection.

**History:** 1961, Act 236, Eff. Jan. 1, 1963 ;-- Am. 1994, Act 397, Imd. Eff. Dec. 29, 1994 ;-- Am. 2004, Act 186, Imd. Eff. July 1, 2004 ;-- Am. 2009, Act 29, Eff. July 5, 2009

© 2009 Legislative Council, State of Michigan