

2 of 4 DOCUMENTS

**UNITED STATES OF AMERICA, Plaintiff, v. FREDERICK LAMARR MCCLOUD, Defendant.**

**CIVIL ACTION NO. 07-15013**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2008 U.S. Dist. LEXIS 113946*

**July 22, 2008, Decided
July 22, 2008, Filed**

**SUBSEQUENT HISTORY:** Adopted by, Summary judgment granted by, Claim dismissed by, Motion denied by, Injunction granted at *United States v. McCloud, 2008 U.S. Dist. LEXIS 70369 ( E.D. Mich., Sept. 17, 2008)*

**PRIOR HISTORY:** *United States v. McCloud, 2006 U.S. Dist. LEXIS 61156 ( E.D. Mich., Aug. 29, 2006)*

**COUNSEL:**  [*1] For United States of America, Plaintiff: Steven P. Cares, LEAD ATTORNEY, U.S. Attorney's Office, Detroit, MI.

Frederick Lamarr McCloud, Defendant, Pro se, Yazoo City, MS.

**JUDGES:** MAGISTRATE JUDGE Virginia M. Morgan, United States Magistrate Judge. DISTRICT JUDGE PAUL V. GADOLA.

**OPINION BY:** Virginia M. Morgan

**OPINION**

**REPORT AND RECOMMENDATION**

   **I. Introduction**

   This matter comes before the Court on (1) Defendant's Motion to Dismiss (D/E # 2), (2) Defendant's Motion for Summary Judgment (D/E # 4), (3) Defendant's Motion for Default Judgment (D/E # 10), (4) Plaintiff's Motion for Summary Judgment (D/E # 11), and (5) Plaintiff's Motion to Dismiss Defendant's Cross Claim (D/E # 14). For the reasons stated below, this Court recommends that all three of defendant's motions be denied and that the government's two motions be granted. Specifically, the District Judge should declare the Financing Statement and Amendments filed by defendant ineffective, order the Secretary of State of the State of Michigan to terminate the Financing Statement and Amendments, enter a permanent injunction precluding defendant from filing liens against other federal employees or officials without leave of the court, and dismiss defendant's counterclaim,  [*2] to the extent that the counterclaim is before the Court.

   **II. Background**

   **A. Factual Background**

   On May 15, 2001, an indictment against defendant was entered in the U.S. District Court for the Eastern District of Michigan charging five counts: Count 1 (bank robbery, aiding and abetting), Count 2 (using, carrying or brandishing a firearm during a crime of violence), Count 3 (possessing a destructive device in furtherance of a crime of violence), and Count 5 (felon in possession of a firearm). (E.D. Mich. CM/ECF Docket Report, 01-80361, pp.1-3, attached as Exhibit 1 to Plaintiff's Motion for Summary Judgment) On March 14, 2002, a second indictment against defendant was entered in the Eastern District of Michigan, charging the aiding and abetting of bank robbery. (E.D. Mich. CM/ECF Docket Report, 02-80188, pp.1-2, attached as Exhibit 2 to Plaintiff's Motion for Summary Judgment) A number of Assistant United States Attorneys (AUSAs) prosecuted these criminal cases on behalf of the United States, including Daniel R. Hurley and Barbara L. McQuade. (E.D. Mich. CM/ECF Docket Report, 01-80361, listing of attorney of record, attached as Exhibit 1 to Plaintiff's

Case 1:10-cv-14339-TLL-CEB Document 39-2 Filed 06/09/11 Page 2 of 14

Page 2
2008 U.S. Dist. LEXIS 113946, *

Motion for Summary Judgment; E.D. Mich. [*3] CM/ECF Docket Report, 02-80188, listing of attorney of record, attached as Exhibit 2 to Plaintiff's Motion for Summary Judgment)

On September 24, 2001, defendant pled guilty to Counts 1, 2, 3, and 5 of the 01-80361 Indictment. (E.D. Mich. CM/ECF Docket Report, 01-80361, entry for 09/24/01, attached as Exhibit 1 to Plaintiff's Motion for Summary Judgment) On September 23, 2002, defendant plead guilty to Count 1 of the 02-80188 Indictment. (E.D. Mich. CM/ECF Docket Report, 02-80188, entry for 09/23/02, attached as Exhibit 2 to Plaintiff's Motion for Summary Judgment)

On or about July 3, 2006, defendant filed a UCC-1 financing statement (Financing Statement), UCC # 2006117768-0, with the office of the Secretary of State for the State of Michigan against Hurley and McQuade. [1] The financing statement form provided by the State of Michigan contains a box to describe the collateral at issue. Defendant described the collateral as follows:

> Cash Exchange (foreign) $ 2,500,000,000.00 Invoice(s) Total: Two Billion Five Hundred Million Dollars and zero cents. Record Owner: Frederick-LaMarr: McCloud Sr(c)(R), Employer ID # [REDACTED]. Items Exchanged: Accounts # 02-80488; # 01-80361 and Invoice # FLM-369-369480-DL; [*4] BM; Charge Account [REDACTED] for the exchange and charge the same to the ORDER OF: Daniel R. Hurley 211 W. Fort Street, Detroit Michigan 48226; and Barbara L. McQuade 211 W. Fort Street, Detroit Michigan 48226; Jointly and Severly (sic): The fee therefrom. See Attached Sheets: Invoice No(s) # FLM-369-369480-DL; BM; A-B. Total Pages of Attachments (158).
>
> ***
>
> 1. Complaint # 01-MJ-80364
>
> 2. Warrant
>
> 3. Indictment # 02-80188
>
> 4. Indictment # 01-80361 [Financing Statement, pp. 1-2, attached as Exhibit 4 to Plaintiff's Motion for Summary Judgment (D/E # 11) and as Exhibit E to Defendant's Motion to Dismiss (D/E # 2)]

Attached to the Financing Statement, defendant provided a number of documents, including filings from his criminal cases with the following words typed or stamped across the original criminal filings:

> ACCEPTED FOR VALUE EXEMPT FROM LEVY for my remedy, Release of the Proceeds, Products Accounts and fixtures in the Order(s) to me immediately in Accordance with Public Policy HJR-192 of June 5, 1933, UCC 10-104, UCC 1-104 and UCC 3-410, UCC 30419.
>
> Exemption I.D. # 377807018
>
> UCC Contract Acct. # 377807018
>
> UCC-1 # 2004225336-2
>
> Value $ 2,500,000,000.00
>
> Date
>
> Invoice # FLM-369-369480-DL; BM

[2]

---

1 The Financing [*5] Statement is attached as Exhibit 4 to Plaintiff's Motion for Summary Judgment (D/E # 11) and as Exhibit E to Defendant's Motion to Dismiss (D/E # 2).

2 A handwritten date, signature, and other (mostly illegible) phrases accompanies the typed words quoted above.

On or about August 29, 2006 and October 6, 2006, defendant filed amendments to the Financing Statement. (Amendments UCC # 2006149553-3 & UCC # 2006170975-4, attached as Exhibits 6 and 7 to Plaintiff's Motion for Summary Judgment) In the amended statement, defendant again listed court cases, both federal and state, as the collateral securing the alleged debt (Amendments, p. 8, attached as Exhibit E to Defendant's Motion to Dismiss)

In their affidavits, Hurley and McQuade deny having any association, relationship, or contact with defendant outside of the performance of their duties as AUSAs, and they expressly state that they never entered into any private commercial agreement with defendant or any security agreement providing an interest in certain collateral. (Declaration of Daniel R. Hurley, PP 1-2, attached as Exhibit 8 to Plaintiff's Motion for Summary Judgment; Declaration of Barbara L. McQuade, PP 1-2, attached as Exhibit 9 [*6] to Plaintiff's Motion for Summary Judgment)

In August 2006, defendant filed a civil action in the Eastern District of Michigan against Hurley, McQuade

and others involved in his criminal cases. (McCloud v. Hurley, E.D. Mich. Case No. 06-13635, Complaint, attached as Exhibit 10 to Plaintiff's Motion for Summary Judgment) On August 18, 2006, United States District Court Judge Avern Cohn dismissed that Complaint as frivolous pursuant to *28 U.S.C. § 1915*. (*McCloud v. Hurley, E.D. Mich. Case No. 06-13635, 2006 U.S. Dist. LEXIS 60999*, Order of Dismissal, attached as Exhibit 11 to Plaintiff's Motion for Summary Judgment)

**B. Procedural Background**

**1. Complaint**

On November 26, 2007, the government filed a complaint against defendant in this matter (D/E # 1). In that complaint, the government alleged that defendant violated *M.C.L. 440.9501(7)* when **[*7]** defendant filed false and fraudulent Financial Statements purporting to perfect secured interests for $ 2,500,000,000.00 on the assets of Hurley and McQuade, the AUSAs responsible for an earlier criminal prosecution and conviction of defendant. The complaint also alleges that Hurley and McQuade had no contact with defendant outside of the performance of their duties as government employees.

**2. Defendant's Motions**

On December 26, 2007, defendant filed a motion to dismiss (D/E # 2). In that motion, defendant argues that Hurley and McQuade are not entitled to qualified immunity. Defendant also argues that the doctrines of *res judicata* and collateral estoppel bar the claim against him. Defendant further argues that he had a valid contract with Hurley and McQuade, and that they breached that contract when they violated defendant's constitutional rights. Specifically, defendant agreed to assist the government in several cases in exchange for a downward departure in his sentence. Defendant also argues that he sent Hurley and McQuade a security agreement, and that their failure to respond constituted default of the contract.

Attached to defendant's motion to dismiss were pages labeled "Cross **[*8]** Claim" where defendant identifies himself as the "Secured Party" and "Holder-in-due-course" of "**FREDERICK LAMARR MCCLOUD** Registation (sic) # 29459-039 DEBTOR" and argues that, as such, he has sole sovereignty over defendant. Defendant also argues that all claims by the government, including both the current claim and any future claims, are barred given that defendant, as the secured party of the debtor, has released defendant from all debts and obligations owed. As part of his relief, defendant also seeks release from prison. (D/E # 2, pp. 14-16) The purported "cross claim" was not docketed as a counterclaim, or as any claim at all. ³

> 3   While labeled "cross claim," defendant's claim against the government is a counterclaim, to the extent it exists, and it will be referred to as such in this Report and Recommendation.

On January 28, 2008, defendant filed a motion for summary judgment with respect to his counterclaim (D/E # 4). In that motion, defendant argues that no genuine issue of material fact exists in this case and he is entitled to judgment as a matter of law given the commercial relationship between defendant, Hurley and McQuade. Defendant also argues that his financing statements **[*9]** are valid and supported by fact and law given the breach of contract.

On February 29, 2008, defendant filed a motion for default judgment against the government with respect to his counterclaim (D/E # 10). In that motion, defendant argues that a default has been entered against the government for failure to answer or otherwise defend and that plaintiff United States of America is not in the military service. Defendant also argues that, given the government's failure to respond to his counterclaim and motion for summary judgment, default judgment is required.

On March 7, 2008, the government filed a response to all three of defendant's motions (D/E # 13). With respect to defendant's motion to dismiss, the government argues that defendant relies on a number of legal theories, such as qualified immunity and *res judicata*, that have no relevance to this case. The government also argues that allegations against prosecutors cannot serve as the basis for filing a UCC Financing Statement. The government further argues that, to the extent defendant is attacking the validity of the judgement or sentence against him, defendant's argument is irrelevant and that, if defendant is attempting to assert **[*10]** a civil claim against the AUSAs based on plea negotiations, the claim fails because the AUSAs are entitled to absolute prosecutorial immunity.

With respect to defendant's motion for summary judgement, the government argues that defendant fails to provide any factual support for any of these allegations. The government also argues that many of defendant's allegations would not give rise to a recognizable cause of action. The government further argues that, even if the allegations could give rise to a cause of action, absolute prosecutorial immunity applies and a UCC Financing Statement could not be filed against the assets of the alleged offender.

With respect to defendant's motion for default judgment, the government argues a default judgment may only be entered against the United States if the claimant establishes a claim or right to relief by evidence

that satisfies the court, and defendant has not established a right to the requested relief in this case.

On April 4, 2004, defendant filed a reply to the government's response to defendant's motion for default judgment (D/E # 20) [4]. In that reply, defendant argues that default judgment is appropriate because the government has failed [*11] to timely respond to defendant's counterclaim or to defendant's motion for summary judgment.

> 4   As detailed below, docket entry (D/E) 20 also contains defendant's response to the government's motion for summary judgment.

### 3. The Government's Motions

On March 5, 2008, the government filed a motion for summary judgment (D/E # 11). In that motion, the government argues that the Financing Statement filed by defendant is "false or fraudulent" given because there is no dispute that Hurley and McQuade never had any association, relationship, or contact with defendant outside of the performance of their duties as a consequence of their employment with the United States government as federal prosecutors. The government also argues that there is no dispute that Hurley and McQuade did not enter into any private commercial contract or security agreement with defendant and the documents filed by defendant also show that his relationship with McQuade and Hurley was merely that of prosecutor/criminal defendant.

On March 7, 2008, the government filed a motion to dismiss defendant's counterclaim (D/E # 14). In that motion, the government argues that pages titled "Cross Claim," were attached as part of defendant's [*12] Motion to Dismiss and, while those pages were not docketed as a counterclaim against the government, to the extent that these pages could be construed as counterclaims, those claims should be dismissed because they are frivolous and lack any basis in fact or law.

On April 4, 2008, defendant filed a response to the government's motion for summary judgment (D/E # 20). In that response, defendant argues that the government's motion is moot because defendant has terminated the lien against Hurley and McQuade. Defendant also argues that he and "plaintiff's (sic)" have come to an agreement regarding the consideration he will receive in exchange for the assistance he gives the government.

On April 18, 2008, the government filed a reply to defendant's response to the government's motion for summary judgment (D/E # 21). In that reply, the government argues that this case is not moot because defendant's purported termination was not properly filed, the purported termination adds requirements and conditions, and because the government seeks more than termination of the lien as part of its relief.

On May 8, 2008, defendant filed a reply to the government's reply to defendant's response to the government's [*13] motion for summary judgment (D/E # 22). In that reply, defendant argues that he has corrected the termination of the lien and that "the plaintiff Daniel Hurley and FBI Agent Bill Fleming" agreed to defendant's conditions for terminating the lien in a face-to-face meeting. Defendant further argues that his agreement with "plaintiff" bars him from refiling the lien. Defendant also argues that, as he is part Blackfoot Indian, the courts have no power over his private affairs unless defendant gives it to them, and he has not done so in this case.

### III. Discussion

### A. The Government's Claim Pursuant to M.C.L. 440.9501(7)

### 1. Standards of Review

Defendant moves for dismissal of the government's claim pursuant to *Fed. R. Civ. P. 12(b)(6)*. *Fed. R. Civ. P. 12(b)(6)* provides for dismissal of a claim for "failure to state a claim upon which relief can be granted." The Supreme Court clarified the law with respect to what a plaintiff must plead in order to survive a *Rule 12(b)(6)* motion in *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)*. See also *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007)*. In Twombly, the Supreme [*14] Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly, 127 S.Ct. at 1964-65* (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly, 127 S.Ct. at 1964-65* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted *Rule 12(b)(6)* standard of *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)*.

The government moves for summary judgment with respect to its claim against defendants pursuant to *Fed. R. Civ. P. 56*. *Fed. R. Civ. P. 56(b)* provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or

any part thereof." **[*15]** Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See *Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)*; see also *B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001)*. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita, 475 U.S. at 587, 106 S.Ct. 1348*. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. *Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003)*; **[*16]** *Fed. R. Civ. P. 56(e)*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita, 475 U.S. at 587, 106 S.Ct. 1348* (quoting *First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L. Ed. 2d 569 (1968))*.

### 2. Form of Defendant's Motion to Dismiss

As a preliminary matter, this Court would note that defendant appears to support his motion to dismiss with evidence from outside the pleadings. When matters outside the pleadings, including affidavits and deposition testimony, are presented to the court in support of a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, the motion is treated as a motion for summary judgment and all parties must be given a "reasonable opportunity to present all material made pertinent to such motion by *Rule 56*." *Fed. R. Civ. P. 12(d)*. In this case, given that the government filed its own motion for summary judgment, it has had an opportunity to present all pertinent material and defendant's motion can be construed as a motion for summary judgment and ruled upon without delay.

### 2. Standing

While the issue of standing was not raised by defendant, **[*17]** the government properly discussed it and this Court finds that the government has standing to bring this action on behalf of Hurley and McQuade. Standing is "the threshold question in every federal case." *Coyne v. American Tobacco Co., 183 F.3d 488, 494 (6th Cir. 1999)*, quoting *Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*. "To establish initial standing to bring suit, a plaintiff must demonstrate (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's challenged action; and (3) it is likely, not speculative, that the injury will be redressed by a favorable decision." *Ailor v. City of Maynardville, 368 F.3d 587, 596 (6th Cir. 2004)*.

It does not appear that the Sixth Circuit has addressed the United States' standing to file suit on behalf of federal employees or officials under these circumstances. However, as noted by the government, standing was found in these circumstances in two unpublished cases in the Eastern District of Michigan. See *United States v. Jones, No. 07-13639, 2007 U.S. Dist. LEXIS 94346, 2007 WL 4571899 (E.D. Mich. Jan. 7, 2008)* (Duggan, J.); United States v. McCaskill, No. 06-13429 (E.D. Mich. Oct. 23, 2006) (Roberts, J.). **[*18]** [5] Moreover, other federal courts have held that "[t]he United States has standing to seek relief from actual or threatened interference with the performance of its proper governmental function," which includes retaliatory actions arising out of a federal employee's official duties. *United States v. Ekblad, 732 F.2d 562, 563 (7th Cir. 1984)*. See also *United States v. Martin, 356 F.Supp.2d 621, 625 (W.D. Va. 2005)*; *United States v. Poole, 916 F.Supp. 861, 862-863 (C.D. Ill. 1996)*.

> 5 Jones is attached as Exhibit 12 and McCaskill as Exhibit 13 to Plaintiff's Motion for Summary Judgment.

### 3. Merits of The Government's Claim

The government's claim is made pursuant to *M.C.L. 440.9501(7)* and that statute provides:

> If a person files a false or fraudulent financing statement with the office of the secretary of state under subsection (1)(b) or (2), a debtor named in that financing statement may file an action against the person that filed the financing statement seeking appropriate equitable relief or damages, including, but not limited to, an order declaring the financing statement ineffective and ordering the office of the **[*19]** secretary of state to terminate the financing statement, and reasonable attorney fees.

In this case, as discussed above, defendant filed a Financing Statement against Hurley and McQuade on or about July 3, 2006 and that Financing Statement identified defendant's criminal cases as collateral. Moreover, Hurley and McQuade denied, in affidavits, having any association, relationship, or contact with defendant outside of the performance of their duties as AUSAs and they expressly state that they never entered into any private commercial or security agreement with defendant.

Even viewing the above evidence in a light most favorable to defendant, the government is entitled to summary judgment. The Financing Statement is "false or fraudulent" given that there is no dispute that Hurley and McQuade never had any association, relationship, or contact with defendant outside of his criminal case and that they did not enter into any private commercial contract or security agreement with him. Moreover, given the collateral listed, including references to the complaint, warrant and indictments of defendant's criminal case, the Financing Statement relates to the alleged actions of Hurley and McQuade [*20] during defendant's criminal case and defendant cannot file a valid UCC lien based on the alleged actions of Hurley or McQuade during his criminal proceedings. See *United States v. McKinley, 53 F.3d 1170, 1172 (10th Cir. 1995)* (holding that Lien documents filed by criminal defendant against prosecutor and trial judge alleging as sole basis for pecuniary liability civil rights violations committed by them during defendant's criminal prosecution failed as matter of law). See also *United States v. Jones, No. 07-13639, 2007 U.S. Dist. LEXIS 94346, 2007 WL 4571899 (E.D. Mich. Jan. 7, 2008)* (Duggan, J.) (finding that courts have consistently refused to recognize liens based on a claimed breach of contract or fraud by federal officials in the performance of their official responsibilities); United States v. McCaskill, No. 06-13429 (E.D. Mich. Oct. 23, 2006) (Roberts, J.) (granting summary judgment where Defendant presents no authority which substantiates the claimants' alleged obligations to him or that breach of the alleged obligations entitles him to assert a lien against their personal property); *United States v. Martin, 356 F.Supp.2d 621, 625 (W.D. Va. 2005)* (Williams, J.) (holding that government officials were not [*21] personally liable to federal prisoners for alleged deficiencies in performance of their official duties in connection with inmates' criminal cases, and thus commercial liens filed by inmates against judges and officials were null and void, where liens were not based on judgments rendered against judges and officials or on any genuine commercial obligations).

In his motion to dismiss, which this court construes as a motion for summary judgment, defendant argues the government's claim is barred by *res judicata* [6] and collateral estoppel [7], but he fails to define those doctrines or point to any prior case involving these parties, outside of defendant's criminal case. Defendant also argues that he had a valid contract with Hurley and McQuade, and that they breached that contract when they violated defendant's constitutional rights when they failed to ensure a downward departure in his sentence. However, defendant does not provide any evidence of such an agreement and, as discussed above, defendant cannot file a valid UCC lien based on the alleged actions of Hurley or McQuade during his criminal proceedings.

> 6   "The elements of res judicata are that '(1) there is a final decision on the merits [*22] of the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims.'" *Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 650-651 n. 4.* quoting *Walker v. General Tel. Co., 25 Fed.Appx. 332, 336 (6th Cir. 2001).*
> 7   The requirements for the application of collateral estoppel are that: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Hamilton's Bogarts, Inc., 501 F.3d at 650-651*, citing *NAACP, Detroit Branch v. Detroit Police Officers Ass'n (DPOA), 821 F.2d 328, 330 (6th Cir. 1987).*]

In defendant's response to the government's motion to dismiss, instead of pointing to any genuine issue of material [*23] fact, defendant argues that the government's claim is moot because the Financing Statement has been terminated and that, as he is part Blackfoot Indian, the courts have no power over his private affairs unless defendant gives it to them and he has not done so in this case. However, defendant provides no evidentiary or legal support for those assertions and the government is entitled to summary judgment.

**4. Relief**

In addition to a declaration that the Financing Statement and Amendments filed by defendant are ineffective and that the Secretary of State of the State of Michigan be ordered to terminate the Financing Statement and Amendments, the government requests a permanent injunction to preclude defendant from filing liens

against other federal employees or officials without leave of the Court. To obtain a permanent injunction, a plaintiff must show: (1) that it has prevailed on the merits; (2) that it will suffer continuing irreparable injury unless an injunction is issued; and (3) that it has no adequate remedy at law. *Buckhorn, Inc. v. Ropak Corp., 656 F.Supp. 209, 225 (S.D. Ohio 1987)*, citing *Dayton Christian Schools, Inc. v. Ohio Civil Rights Commission, 766 F.2d 932, 961 (6th Cir. 1985)*, **[*24]** *rev'd on other grounds*, *477 U.S. 619, 106 S. Ct. 2718, 91 L. Ed. 2d 512 (1986)*; *SKS Merch, L.L.C. v. Barry, 233 F.Supp.2d 841, 852 (E.D. Ky 2002)*.

In this case, the government should prevail on the merits of its claim. The government has also demonstrated through defendant's multiple **filings** to date, including the Financing Statement against Hurley and McQuade, financing statements against Michigan State Court Judges [8] and the frivolous civil action against Hurley, McQuade and other federal officials, that it is reasonable to presume that defendant is likely to continue **filing** fraudulent **liens** against officials unless he is precluded from doing so. There is no viable alternate remedy other than a permanent injunction to counter the effects of a **lien** which purports to **enjoin** an official's personal property and, therefore, the Court should issue a permanent injunction precluding defendant from **filing liens** against other federal employees or officials without **leave** of the Court.

> 8  (UCC Correction Statements, attached as Exhibit 14 to Plaintiff's Motion for Summary Judgment)

### B. Defendant's Counterclaim

#### 1. Standards of Review

Defendant moves for summary judgment on his counterclaim pursuant to *Fed. R. Civ. P. 56*. As discussed **[*25]** above, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.

The government first moves for dismissal of defendant's counterclaim pursuant to *Fed. R. Civ. P. 12(b)(1)*. *Fed. R. Civ. P. 12(b)(1)* provides that an action may be dismissed for "lack of subject-matter jurisdiction." A complaint may be dismissed "for lack of subject matter jurisdiction pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure* when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)*.

A complaint was frivolous because it lacked an arguable basis in law or fact. See *Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)*.

Plaintiff also moves for dismissal pursuant to *Fed. R. Civ. P. 12(b)(6)*. As discussed above, *Fed. R. Civ. P. 12(b)(6)* provides for dismissal of a claim for "failure to **[*26]** state a claim upon which relief can be granted."

#### 2. Default Judgment

As a preliminary matter, defendant moves for default judgment with respect to his counterclaim. *Fed. R. Civ. P. 55* provides:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment.
>
> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative **[*27]** must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

(c) Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

(d) Judgment Against the United States. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

The Sixth Circuit has recognized that it is important to distinguish between an entry of default and a default judgment. See, e.g., *U.S. v. Real Property, All Furnishings Known as Bridwell's Grocery, 195 F.3d 819, 820 (6th Cir. 1999). Fed. R. Civ. P. 55* provides for entry of default by the clerk and for a judgment of default to be entered by the clerk or the court, but the language of the rule also provides [*28] that entry of default and an entry of default judgment are two separate steps, with entry of default being the first step. In this case, while defendant's motion for default judgment states that a default had been entered against plaintiff, defendant's request for default was actually denied by the clerk (D/E # 9). Given that defendant's request for an entry of default was denied, his motion for default judgment must also be denied.

Moreover, as noted by the government, defendant seeks default judgment with respect to his counter claim against the United States of America. Given that defendant's claim is against the United States, *Fed. R. Civ. P. 55(d)* applies and default judgment may only be entered if defendant "establishes a claim or right to relief by evidence that satisfies the court." *Fed. R. Civ. P. 55(d)*. Defendant does to not point to any such evidence in his motion for default judgment and, as discussed below, his claim is without merit.

**3. Merits of Defendant's Counterclaim**

As discussed above, while it was no docketed as a counterclaim, attached to defendant's motion to dismiss were pages labeled "Cross Claim" in which defendant appears to argue that, given the debt owed defendant, [*29] the government should be barred from ever bringing an action against him again and that defendant should be released from prison. (D/E # 2, pp. 14-16)

With respect to defendant's motion for summary judgement on that claim, the government correctly notes that defendant fails to provide any factual or legal support for any of his allegations. Instead, defendant merely repeats the allegations found in his counterclaim. When making a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and the party opposing the motion must only come forward with specific facts showing that there is a genuine issue for trial if that initial burden is met. *Matsushita, 475 U.S. at 587, 106 S.Ct. 1348*. In this case, by merely restating his counterclaim as a motion for summary judgment, defendant has failed to meet his initial burden and his motion for summary judgment must be denied. Moreover, as discussed below, defendant's counterclaim is frivolous and, as such, he is not entitled to judgment as a matter of law.

With respect to the government's motion to dismiss, the government correctly argues both that defendant's counterclaim [*30] is frivolous and that defendant has failed to state a claim upon which relief can be granted. In his counterclaim, defendant identifies himself as the "Secured Party" and "Holder-in-due-course" of "**FREDERICK LAMARR MCCLOUD** Registration (sic) # 29459-039 DEBTOR" and argues that, as such, he has sole sovereignty over defendant. Defendant also argues that all claims by the government, including both the current claim and any future claims, are barred given that defendant, as the secured party of the debtor, has released defendant from all debts and obligations owed. As part of his relief, defendant also seeks release from prison.

*Pro se* litigants "enjoy the benefit of a liberal construction of their pleadings and filings," but, in this case, defendant does not identify what his exact claim is or provide any legal basis for his requested relief. Moreover, while defendant appears to be seeking release from prison through a civil counterclaim, federal "habeas corpus pursuant to *28 U.S.C. § 2254* is the exclusive avenue for challenging the duration of a prisoner's confinement." *Dotson v. Wilkinson, 329 F.3d 463, 466 (6th Cir. 2003)*. Given the deficiencies of defendant's counterclaim, the counterclaim [*31] lacks an arguable basis in law or fact and it should be dismissed pursuant to *Fed. R. Civ. P. 12(b)(1)*. See *Neitzke, 490 U.S. at 325*. Additionally, the counterclaim also fails to contain sufficient factual allegations to raise defendant's right to relief above the speculative level, even assuming his allegations are true, and defendant's counterclaim should be dismissed pursuant to *Fed. R. Civ. P. 12(b)(6)*. See *Twombly, 127 S.Ct. at 1964-65*.

The government also argues that defendant's counterclaim is barred by the doctrine of *res judicata*. As noted above, the "elements of res judicata are that '(1) there is a final decision on the merits of the first action by a court of competent jurisdiction; (2) the second ac-

tion involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is identity of claims.'" *Hamilton's Bogarts, Inc. v. Michigan, 501 F.3d 644, 650-651 n. 4*. quoting *Walker v. General Tel. Co., 25 Fed.Appx. 332, 336 (6th Cir. 2001)*.

In this case, the government briefly argues that defendant's prior civil action against Hurley and McQuade, among others, and [*32] the final judgment rendered in that civil action bars defendant's counterclaim. With respect to defendant's prior civil action against Hurley and McQuade, the Honorable Avern Cohn found:

> The complaint contains eighteen counts, alleging the following crimes: (1) fraud, (2) perjury, (3) impersonation, (4) commercial crimes, (5) mail fraud, (6) electronic funds transfer fraud, (7) conspiracy, (8) slavery, (9) violation of public policy house joint resolution, (10) kidnapping, (11) harassment, (12) treason, (13) mixed war, (14) trespass, (15) willful misrepresentation, (16) extortion, (17) civil racketeering, and (18) falsification of public document. He seeks money damages against each defendant under every count, for a total of $ 4,006,417,000.00.
>
> The "criminal complaint" is subject to dismissal under *§ 1915(e)(2)* for several reasons. First, McCloud seeks monetary relief. Absent an express waiver, the doctrine of sovereign immunity bars claims for monetary relief that are brought against the United States, its agencies or its employees in their official capacity. *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin, 845 F.2d 113, 115 (6th Cir. 1988)* (per curiam). All of the defendants [*33] are federal employees and were presumptively sued in their official capacity because the complaint does not indicate that they were being sued as individuals. See *Wells v. Brown, 891 F.2d 591, 592-93 (6th Cir. 1989)*. Thus, McCloud's claims are barred by the doctrine of sovereign immunity. See *Ecclesiastical Order of the Ism of Am, Inc., 845 F.2d at 115-16*. Second, the claims against defendants pertain to official actions taken during McCloud's criminal case and are therefore protected under the doctrine of immunity. See *Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)* (prosecutorial immunity); *Mireles v. Waco, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)* (per curiam) (judicial immunity). Third, to the extent that McCloud is seeking to bring criminal charges against defendants, his claims fail. See *Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973)* (private citizen lacks standing to initiate criminal proceedings); see also *Associated Builders & Contractors v. Perry, 16 F.3d 688, 692-93 (6th Cir. 1994)* (private party lacks standing to compel the state to pursue criminal or civil actions). [*McCloud v. Hurley, E.D. Mich. Case No. 06-13635, Order of Dismissal, pp. 3-4, 2006 U.S. Dist. LEXIS 60999 at *3-5*, attached as Exhibit 11 to Plaintiff's [*34] Motion for Summary Judgment.]

Given those findings, the doctrine of *res judicata* does not appear to apply to defendant's counterclaim. As discussed above, defendant asserts in his counterclaim that, as a "Secured Party" of "**FREDERICK LAMARR MCCLOUD** Registion (sic) # 29459-039 DEBTOR", he has the power to bar claims against himself and to order his release from prison. Whatever the merits of the counterclaim, it does not appear from Judge Cohn's decision that defendant brought such a claim in the earlier civil action against Hurley and McQuade, and the government makes no argument on that such a claim was actually litigated, or should have been litigated, in the prior civil case. Given that at least one element of the doctrine of *res judicata* is missing from this case, the doctrine does not apply to defendant's counterclaim.

### IV. Conclusion

For the reasons discussed above, the court recommends that all three of defendant's motions be denied and that the government's two motions be granted. Specifically, the District Judge should declare the Financing Statement and Amendments filed by defendant ineffective, order the Secretary of State of the State of Michigan to terminate the Financing Statement and Amendments, [*35] enter a permanent injunction precluding defendant from filing liens against other federal employees or officials without leave of the court, and dismiss defendant's counterclaim, to the extent that the counterclaim is before the Court.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy

hereof as provided for in *28 U.S.C. § 636(b)(1)* and *E.D. Mich. LR 72.1(d)(2)*. Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985)*; *Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991)*; *United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981)*. The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991)*; *Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987)*. Pursuant to *E.D. Mich. LR 72.1(d)(2)*, a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting **[*36]** party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

/s/ Virginia M. Morgan

Virginia M. Morgan

United States Magistrate Judge

Dated: July 22, 2008



17 of 19 DOCUMENTS

**WAYNE CARPENTER and LYNDA CARPENTER, Plaintiffs-Appellees, v KAY LORRAINE-LAURO, Defendant-Appellant.**

**No. 179793**

**COURT OF APPEALS OF MICHIGAN**

*1996 Mich. App. LEXIS 1956*

**September 27, 1996, Decided**

**NOTICE:** [*1] IN ACCORDANCE WITH THE MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**PRIOR HISTORY:** LC No. 94-3812 CH.

**DISPOSITION:** Affirmed.

**JUDGES:** Before: Michael J. Kelly, P.J., and O'Connell and K.W. Schmidt, [*] JJ.

> [*] Circuit judge, sitting on the Court of Appeals by assignment.

**OPINION**

PER CURIAM.

Defendant appeals as of right the order granting summary disposition in favor of plaintiffs. We affirm.

In 1987, defendant sought to purchase three lots owned by plaintiffs in the city of Owosso. While a purchase agreement was signed by the parties, the deal fell through when, apparently, defendant was unable to obtain financing. The parties then entered into a month-to-month lease. Defendant made monthly payments from 1987 through 1994, when she received a notice to quit. In response, defendant recorded a **common law lien** on the **property,** contending that she had expended over $ 20,000 in labor, services, improvements and materials on the **property.** Because defendant's lien constituted a cloud on the title, plaintiffs brought suit, seeking to quiet title on the property. Upon plaintiffs' motion, the court granted summary disposition [*2] in favor of plaintiffs, declaring the lien "to be void, a nullity and of no legal effect . . . ."

On appeal, defendant contends, in essence, that the decision of the court was marred by errors of law and procedural irregularities sufficient to warrant reversal. We find no errors of law. The instant dispute concerns defendant's placement of a **common law lien** on plaintiffs' **property.** A common law lien is "the right of detention, in persons who have bestowed labor upon an article, or done some act in reference to it, and who have the right of detention till reimbursed for their expenditures and labor." *Aldine Mfg Co v Phillips, 118 Mich. 162, 164; 76 N.W. 371 (1898)*, quoting *Oakes v Moore, 24 Me. 214 (41 Am. Dec. 379)*. Thus, such a lien always involves the possession of chattel, *Aldine, supra*, and typically arises in the present day in the context of the repair of goods, particularly, automobiles. Therefore, because the present defendant was not in possession of chattel belonging to another but, instead, sought to encumber real **property,** her assertion of a **common law lien** was inappropriate. Accordingly, we find no error in the [*3] court's legal conclusions and agree that plaintiffs were entitled to have the lien declared void *ab initio*.

We also fail to find procedural irregularities sufficient to warrant reversal. Defendant alleges that she failed to attend the hearing on plaintiffs' motion for summary disposition because of confusion as to the date of the hearing caused by the court administrator. However, the court did not grant summary disposition based on defendant's failure to appear, but because of its correct conclusion that defendant's asserted defense of a valid common law lien had no basis in law. Similarly, while defendant's request for adjournment should have been granted pursuant to *MCR 2.116(G)(a)(i)*, in light of the fact that defendant could have presented no argument

at the hearing that could possibly have influenced the validity of such a **common law lien** in the context of real **property,** we find no prejudice to defendant. In short, given the lack of merit in defendant's legal argument, any procedural irregularities occurring below do no justify reversal.

Affirmed.

/s/ Michael J. Kelly

/s/ Peter D. O'Connell

/s/ Kenneth W. Schmidt



17 of 48 DOCUMENTS

**Great Plains National Bank, Plaintiff, v. Sam Leppert, Laura Leppert, Andrew Anthony Heinze and J. Doe 1-V, Defendant.**

*Civil No. 3:08-cv-56*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NORTH DAKOTA, SOUTHEASTERN DIVISION**

*2008 U.S. Dist. LEXIS 101980*

**December 3, 2008, Decided**

**COUNSEL:** [*1] For Great Plains National Bank, Plaintiff, Counter Defendant: Jonathan R. Fay, LEAD ATTORNEY, JONATHAN FAY, P.C., Fargo, ND.

Sam Leppert, Laura Leppert, Defendants, Pro se, Dazey, ND.

Andrew Anthony Heinze, Defendant, Pro se, Dazey, ND.

Sam Leppert, Laura Leppert, Counter Claimants, Pro se, Dazey, ND.

**JUDGES:** Ralph R. Erickson, United States District Judge.

**OPINION BY:** Ralph R. Erickson

**OPINION**

**ORDER REMANDING CASE**

Before the Court is a Motion by the Plaintiff, Great Plains Bank, to remand this action to state court. (Doc. 2). Plaintiff has also moved for a hearing on its Motion for Remand. (Doc. 3). Because the Court has before it sufficient information to conclude that a Remand to state court is inevitable, the motion will be rendered moot and will not be addressed.

Also before the Court is Defendant Sam Leppert's Motion to Take Judicial Notice. As the granting of Plaintiff's Motion to Remand will render the motion moot, it will not be addressed as well. [1]

   1   While the Court will not address the Defendant's Motion to Take Judicial Notice, it is worthy of note that *Rule 64 of the Federal Rules* does not create any basis for accepting a "**Common Law Lien**" and that *North Dakota Rule 64* specifically refers to seizures of **property** [*2] "in the manner provided for by the law of this state existing at the time the remedy is sought." The available remedies under current law are governed by Chapter 32-08.1 (attachment), Chapter 32-07 (replevin) and Chapter 32-09 (garnishment). The defendant has not pointed to any possible authority for his "**Common Law Lien**" other than his own imaginings. Which is another indicator of the frivolous nature of the defendant's proceedings in this Court.

**I. PROCEDURAL HISTORY**

This is the second time that this action has been attempted to be removed by Leppert to the United States District Court for the District of North Dakota. In Great Plains National Bank v. Sam Leppert and J. Doe I - V, 3:07-cv-114 (2007), Leppert attempted to remove state foreclosure action to this court. The Court remanded the action to state court on a number of grounds, including: (1) that the attempt to remove was untimely; (2) that the attempt to remand failed wholly to comply with *28 U.S.C. § 1446(a)* in that the defendant failed to file any of the necessary documentation other than a copy of the underlying complaint; (3) that the defendant had attempted to improperly add party Plaintiffs to the action including a [*3] Minnesota banking entity and the plaintiff's counsel. At that time the court noted "whether the defendant, who is unrepresented, made this alteration to create diversity where none exists, to harass plaintiff or its counsel, or out of ignorance of the appropriate

procedures is unclear." Given the nature of Leppert's current attempt to remove there is no longer a debatable proposition: It is clear that the Leppert's intention is to vex, harass, and obfuscate all attempts by the Plaintiff to foreclose it's underlying mortgage.

The Court remanded the action to state court by an order dated 14 April, 2008. Subsequently, the Plaintiff's amended their action to add party defendants Laura Leppert and Andrew Anthony Heinze. (Doc. 6 pp 1-2). These co-defendants were named only for the purposes of foreclosure, the Plaintiff does not assert the right to a deficiency against any party, including Sam Leppert. Id.

On 17 June, 2008 a contempt hearing was held in Valley City in the Southeast District Court for the State of North Dakota.

On 27 June, 2008 Judge Mikal Simonson of the Southeast Judicial District Court in the State of North Dakota found Sam Leppert in contempt of court for a willful disobedience [*4] of the Court's orders.

Not entirely surprisingly, given Leppert's repetitive attempts to obstruct justice in this case, Leppert filed a Notice of Removal on 27 June, 2008.

These proceedings followed.

**II. DISCUSSION**

In reviewing Leppert's Answer to this action only one thing is clear-the Answer is conclusory, fails to disclose any relevant fact and is designed primarily to delay, vex, harass, and annoy. After first claiming that he is without any knowledge of any fact contained in the Complaint the defendant asserts 23 affirmative defenses in a summary fashion. Not a single fact is averred that would support any one of the defenses-most of which are unrecognizable as "defenses" in any court.

At this point the "Answer" sidetracks into an ethereal claim that somehow the conduct of Great Plains National Bank violates the Fair Debt Collection Practices Act. Without any factual allegation to support a claim as to why the foreclosure of an agricultural loan would be subject to any provision of the FDCPA, see, *Munk v. Federal Land Bank of Wichita, 791 F2d 130, 132 (10th Cir. 1986)*, Leppert diverts to the truly fantastic: a claim that the bank's conduct violates *18 U.S.C. §§ 241* and *242*. Both of [*5] which are criminal conspiracy statutes. It is well-settled law that these statutes do not create a private cause of action. See, *Peabody v. United States, 394 F. 2d 175 (9th Cir. 1968)*(cert. den. *393 U.S. 1033, 89 S. Ct. 648, 21 L. Ed. 2d 577*); *Lerch v. Boyer, 929 F. Supp. 319 (N.D. Ind. 1996)*; *Kelly v. Rockefeller, 69 Fed. Appx. 414 (10th Cir. 2003)*; Riser v. WSYX-TV ABC-6, CL 31409427 (S.D. Ohio 2002).

Finally, Leppert asserts that the acts of Plaintiff violate *42 U.S.C. §§ 1985* and *1986*, conspiracy to violate civil rights. There are no facts alleged in support of these claims whatsoever. The general rule of *pro se* pleadings in civil rights actions is that they "are construed liberally[, but] they must not be conclusory and must set forth facts which state a claim as a matter of law." *Martin v. Sargent, 780 F. 2d 1334, 1337 (8th Cir. 1985)*("Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions).

In this case Leppert has pled no fact to support his conclusions whatsoever-the whole tone and tenor of the pleading is to obscure and delay.

In short, the pleading presented by Leppert is interposed in objective bad faith, serves no useful purpose and is specifically [*6] designed to obstruct justice.

Based on the above and foregoing the Court finds a want of jurisdiction under either *28 U.S.C. § 1331* or *28 U.S.C. § 1332*.

Under these circumstances merely remanding the case to state court will not prevent further abuses of the removal power and the Court needs to take remedial action to stop further abuses of process by Leppert.

**III. ORDER**

**IT IS HEREBY ORDERED:**

1. This case is hereby remanded to the State of North Dakota, County of Barnes, District Court forthwith.

2. Plaintiff is hereby awarded costs and attorney's fees from Defendant Sam Leppert in the sum of $ 750.00.

3. No further pleading of Sam Leppert shall be allowed in any case without the prior approval of either a United States District Judge or United States Magistrate Judge finding that the pleading appears to be interposed in good faith and states sufficient grounds to be entertained.

Dated this 3rd day of December, 2008.

/s/ Ralph R. Erickson

Ralph R. Erickson, District Judge

United States District Court