Joseph J Coyer and
Janet M Coyer, H/W
878 East Prevo Road
Pinconning, MI 48650
*Filing pro-se, without an attorney*



F I L E D
OCT 20 2011
CLERK'S OFFICE
BAY CITY

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH J COYER** and | ) | Case #: **10-14339-BC** |
| **JANET M COYER**, H/W | ) | |
| Plaintiffs, | ) | (Honorable Thomas L. Ludington) |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFFS RULE 60 MOTION** |
| | ) | |
| | ) | |
| **HSBC MORTGAGE SERVICES**, | ) | |
| Defendant | ) | Dated: October 20, 2011 |
| _____ | ) | |

## PLAINTIFFS' RULE 60 MOTION
-------------------------------------------
**Joseph J. Coyer and Janet M. Coyer are before this court by special appearance without waiving any rights remedies or defenses, statutory or procedural.**
-------------------------------------------

   **COME NOW** Plaintiffs Joseph J. Coyer and Janet M. Coyer and hereby file this

Rule 60 Motion pursuant to Civil Procedure Rule 60 and move the court to set aside or vacate its

order filed on 9/28/2011.

   Sale date currently scheduled for November 18, 2011.

### PARTIES

   Joseph J. Coyer and Janet M. Coyer are husband and wife.  They are owners of the

Property.

   OPTION ONE MORTGAGE CORPORATION (hereinafter "Option One") is the Lender

1   pursuant to the Mortgage (Bay County Michigan Liber 2341, Page 201; recorded 6/29/2005).

2          Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") allegedly has an

3   "Assignment of Mortgage" from Option One (Bay County Michigan Liber 2409, Page 527;

4   recorded on 2/6/2006 ).

5          HSBC MORTGAGE SERVICES (hereinafter "HSBC") claims to be the purchaser of the

6   loan "on the secondary market."  There is an alleged "Assignment of Mortgage" from MERS to

7   HSBC (Bay County Michigan Liber 2754, Page 571; recorded on 8/25/2010).

8                                    **THE EXHIBITS**

9          The exhibits referred to in this pleading are as follows:

10         Exhibit 1 is Court Document # 14 filed on 12/8/2010.

11         Exhibit 2 is Court Document # 15.

12         Exhibit 3 is Court Document # 16.

13         Exhibit 4 is Court Document # 17.

14         Exhibit 5 is Court Document # 18.

15         Exhibit 6 is Court Document # 19.

16         Exhibit 7 is Court Document # 20.

17         Exhibit 8 is Court Document # 21.

18                                        **FACTS**

19         Plaintiffs' financing transaction with Option One involved a promissory note ("Note")

20   and a mortgage security instrument ("Mortgage").

21         The Mortgage was dated June 24, 2005 and for $182,000.

22         In its attempt to foreclose, HSBC claimed to have purchased the Mortgage and to have an

23   assignment of the Mortgage from MERS which allegedly has an assignment of the mortgage

1    from Option One.

2        There is no admissible evidence to prove that these two assignments are valid.

3        There is no admissible evidence to prove that the Note was assigned to either MERS or

4    HSBC.

5        HSBC never claimed to own the Note.

6        HSBC never specified which provision in the Mortgage Instrument provided it the right

7    to foreclose.

8        HSBC never proved that it is entitled to foreclose.

9        HSBC and Option One never responded to Plaintiffs' request to validate the debt.

10   (Exhibit 4)

11       Due to their failure to validate the alleged debt, HSBC and Option One were issued a

12   "Notice of Default" from Plaintiffs. (Exhibit 5)

13       Due to their failure to validate the alleged debt, HSBC and Option One were issued a

14   "Notice of Removal" from Plaintiffs. (Exhibit 6)

15       Due to their failure to validate the alleged debt, HSBC and Option One were issued a

16   "Notice of Revocation of Power of Attorney" from Plaintiffs. (Exhibit 7)

17       Exhibits 5, 6, and 7 are legal documents recorded by the Register of Deeds, Bay County,

18   Michigan.

19       Neither Option one nor HSBC (or MERS) contested the validity and legality of Exhibits

20   5, 6, and 7.

21       *Assignment of Mortgage from MERS to HSBC*

22       The alleged "Assignment of Mortgage" (Exhibit 8) from MERS to HSBC was dated

23   August 10, 2010 -- after Plaintiffs had already issued and recorded their notices in Exhibits 5, 6,

1   and 7.

2       Plaintiffs are not in the possession of any document that would prove that MERS legally

3   owned the Mortgage prior to assigning it to HSBC on August 10, 2010.

4       Plaintiffs are not in the possession of any document that would prove that Maria Vadney

5   (1) works for MERS and (2) is entitled to assign a mortgage on behalf of MERS. (Exhibit 8)

6       According to an April 7, 2010 170-page-deposition transcript of Mr. William Hultman,

7   Secretary of MERS, Inc., Mr. Hultman stated that he was delegated with the authority "to elect

8   persons" to be officers -- assistant secretaries and vice-presidents -- of MERS.[1]

9       Mr. Hultman stated that MERS does not have employees[2], and that he had appointed

10   thousands of assistant secretaries.[3]

11       Mr. Hultman added that the MERS Corporate Resolution does not authorize the

12   certifying officers to assign a promissory note, that MERS cannot sell the mortgage and receive

13   consideration or monetary value, and that MERS does not pay any taxes on properties' assets.[4]

14       Pursuant to Exhibit 8, HSBC paid one dollar as a consideration for the mortgage.

15       Such a statement would contradict MERS' Vice President's statement that no

16   consideration or monetary value is received by MERS in exchange for the Mortgage.

17       There is no evidence on record to prove that a one dollar, or any other consideration, was

18   paid by HSBC to MERS in exchange for the Mortgage.

19       HSBC damages and recovery are limited to $1, which is the amount of its consideration.

20       Furthermore, Mr. Hultman also stated that MERS does not have an ownership interest in

---

[1]  Exhibit 100, page 61.
[2]  Exhibit 100, page 69.
[3]  Exhibit 100, page 71.
[4]  Exhibit 100, page 121-122.

1    the promissory note.[5]

2          In this case, HSBC never acquired an ownership interest in the promissory note.

3          *Assignment of Mortgage from Option One to MERS*

4          Plaintiffs are not in the possession of any document that would prove that Katherine

5    Burns (1) works for Option One and (2) is entitled to assign a mortgage on behalf of Option One.

6    (Exhibit 3)

7          Plaintiffs are not in the possession of any document that would prove that Option One

8    owned the Mortgage prior to assigning it to MERS on June 30, 2005. (Exhibit 3)

9          MERS never owned and never assigned the Note to HSBC.

10          *MERS Background*

11          MERS was developed as a mechanism to provide for the faster and lower cost buying and

12    selling of mortgage debt. Apparently, over the last two decades, the buying and selling of loans

13    backed by mortgages after their initial issuance had accelerated to the point that those operating

14    in that market concluded that the statutory requirement that mortgage transfers be recorded was

15    interfering with their ability to conduct sales as rapidly as the market demanded. By operating

16    through MERS, these financial entities could buy and sell loans without having to record a

17    mortgage transfer for each transaction because the named mortgagee would never change; it

18    would always be MERS even though the loans were changing hands. MERS would purportedly

19    track the mortgage sales internally so as to know for which entity it was holding the mortgage at

20    any given time and, if foreclosure was necessary, after foreclosing on the property, would quit

21    claim the property to whatever lender owned the loan at the time of foreclosure.

22          *Bankruptcy*

23          Plaintiffs received a discharge under the U.S. Bankruptcy Code.

---

[5] Exhibit 100, page 138.

1

**ISSUES**

2       Whether Defendant HSBC could foreclose the Mortgage on Plaintiffs' Property --

3 without having an interest in the Note or the indebtedness secured by the mortgage.

4       Whether the Court abused its discretion in ignoring material facts in Plaintiffs' favor.

5

6

**STANDARD OF REVIEW**

7 **MCL 600.3204**

8      (1) Subject to subsection (4), a party may foreclose a mortgage by advertisement
9      if all of the following circumstances exist:

10

11        (a) A default in a condition of the mortgage has occurred, by which the
12        power to sell became operative.
13        (b) An action or proceeding has not been instituted, at law, to recover the
14        debt secured by the mortgage or any part of the mortgage; or, if an action
15        or proceeding has been instituted, the action or proceeding has been
16        discontinued; or an execution on a judgment rendered in an action or
17        proceeding has been returned unsatisfied, in whole or in part.
18        (c) The mortgage containing the power of sale has been properly recorded.
19        (d) The party foreclosing the mortgage is either the owner of the
20        indebtedness or of an interest in the indebtedness secured by the mortgage
21        or the servicing agent of the mortgage.

22

23      (2) If a mortgage is given to secure the payment of money by installments, each of
24      the installments mentioned in the mortgage after the first shall be treated as a
25      separate and independent mortgage. The mortgage for each of the installments
26      may be foreclosed in the same manner and with the same effect as if a separate
27      mortgage were given for each subsequent installment. A redemption of a sale by
28      the mortgagor has the same effect as if the sale for the installment had been made
29      upon an independent prior mortgage.

30

31      (3) If the party foreclosing a mortgage by advertisement is not the original
32      mortgagee, a record chain of title shall exist prior to the date of sale under section
33      3216 evidencing the assignment of the mortgage to the party foreclosing the
34      mortgage.

35

36      (4) A party shall not commence proceedings under this chapter to foreclose a
37      mortgage of property described in section 3205a(1) if 1 or more of the following
38      apply:
39        (a) Notice has not been mailed to the mortgagor as required by section
40        3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for a housing counselor to notify the person designated under section 3205a(1)(c) of a request by the mortgagor under section 3205b(1) has not expired.

(c) Within 14 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed.

(d) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents if requested under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

(e) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

(f) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

(5) Subsection (4) applies only to proceedings under this chapter in which the first notice under section 3208 is published after the effective date of the amendatory act that added this subsection and before 2 years after the effective date of the amendatory act that added this subsection.

## ARGUMENT

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by examining the plain language of the statute. Although a statute may contain separate provisions, it should be read as a consistent whole, if possible, with effect given to each provision. [*ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526-527; 672 NW2d 181 (2003).]

When construing a statute, a court must look at the object of the statute in light of the harm it is designed to remedy and apply a reasonable construction that will best accomplish the purpose of the Legislature. [*ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526-527; 672 NW2d 181 (2003).]

### A.    EMERGENCY TEMPORARY RESTRAINING ORDER

1    One issue is whether HSBC is an entity that qualifies under MCL 600.3204 to foreclose

2  by advertisement on the subject Property, or if it must instead seek to foreclose by judicial

3  process.

4    Based on the available evidence, HSBC does not meet the requirements of MCL

5  600.3204 and, therefore, may not foreclose by advertisement.

6    HSBC does not have authority under MCL 600.3204(1)(d) to foreclose by advertisement

7  because it does not fall within any of the three categories of mortgagees permitted to do so under

8  that statute.

9    Furthermore, HSBC is not the mortgagee under the Mortgage.

10  *Irreparable Harm*

11    Plaintiffs are the legal guardians of their 13 year old grand-daughter Callie M. Coyer who

12  has lost both parents and could possibly lose her home.

13    Should Plaintiffs' grand-daughter lose her home, she will become a ward of the state --

14  which will result in irreparable harm resulting from the psychological damage of relocating.

15    Plaintiffs move the Court to issue a temporary restraining order to stop the foreclosure

16  sale currently scheduled for November 18, 2011.

17              **B.    MCL 600.3204(1)(d)**

18    The Court must construe the evidence in the light most favorable to the Plaintiffs.

19  *MCL 600.3204(1)(a)*

20    There is no admissible evidence of a default to HSBC, the foreclosing party.

21    HSBC never identified which provision of the Mortgage grants it the authority to

22  foreclose and how it became entitled to enforce the mortgage.

23    HSBC fails to meet the requirements of MCL 600.3204(1)(a).

1    *MCL 600.3204(1)(c)*

2    The Assignment of Mortgage from MERS to HSBC was recorded. (Exhibit 8)

3    However, the assignment itself is void for reasons cited within this pleading.

4    The recording of a void or voidable assignment is in itself void and ineffective, and has

5    no lawful force.

6    Therefore, HSBC fails to meet the requirements of MCL 600.3204(1)(c).

7    *MCL 600.3204(1)(d)*

8    Furthermore, HSBC fails to meet the requirements of MCL 600.3204(1)(d).

9    Foreclosure by advertisement is governed by MCL 600.3204(1)(d), which provides, in

10   pertinent part:

11
12           [A] party may foreclose a mortgage by advertisement if all of the following
13           circumstances exist:
14
15                                    * * *
16
17           (d) The party foreclosing the mortgage is either the owner of the indebtedness or
18           of an interest in the indebtedness secured by the mortgage or the servicing agent
19           of the mortgage.
20
21   In this case, MERS is neither the owner of the indebtedness, nor the servicing agent of

22   the mortgage. Therefore, MERS lacked the authority to foreclose by advertisement on

23   defendants' properties unless it was "the owner . . . of an interest in the indebtedness secured by

24   the mortgage." MCL 600.3204(1)(d).

25   Since HSBC acquired whatever interest it has from MERS through an Assignment of

26   Mortgage (Exhibit 8), then HSBC cannot acquire more than what MERS already has.  As a

27   result, HSBC is not the owner of the indebtedness and there is no evidence of it being a servicing

28   agent of the mortgage.

1    The question, then, is what being the "owner . . . of an interest in the indebtedness

2    secured by the mortgage" requires. According to Black's Law Dictionary, to "own"

3    means "[t]o have good legal title; to hold as property; to have a legal or rightful title to." Black's

4    Law Dictionary (6th ed). That text defines an "interest" as "the most general term that can be

5    employed to denote a right, claim, title or legal share in something". "Indebtedness" is defined as

6    "[t]he state of being in debt . . . the owing of a sum of money upon a certain and express

7    agreement."

8    Reasonably construing the statute according to its common legal meaning, *ISB Sales Co*,

9    258 Mich App at 526-527, the Plaintiffs' indebtedness, if any, is solely based upon the Notes.

10   Consequently, in order for a party to own an interest in the indebtedness, it must have a legal

11   share, title, or right in the note.

12   An interest in the mortgage is not sufficient under MCL 600.3204(d)(1).

13   This is necessarily so, as the indebtedness, i.e., the note, and the mortgage are two

14   different legal transactions providing two different sets of rights, even though they are typically

15   employed together.

16   A "mortgage" is "[a] conveyance of title to property that is given as security for the

17   payment of a debt or the performance of a duty and that will become void upon payment or

18   performance according to the stipulated terms." The mortgagee has an interest in the *property*.

19   See *Citizens Mtg Corp v Mich Basic Prop Ins Assoc*, 111 Mich App 393, 397; 314 NW2d 635

20   (1981) (referencing the "mortgagee's interests in the property").

21   The mortgagor covenants, pursuant to the mortgage, that if the money borrowed under

22   the note is not repaid, the mortgagee will retain an interest in the *property*.

23   Thus, unlike a note, which evidences a debt and represents the obligation to repay, a

1   mortgage represents an interest in real property contingent on the failure of the borrower to repay

2   the lender.

3          The indebtedness, i.e., the note, and the mortgage are two different things.

4          Applying these considerations to the present case, it becomes obvious that HSBC does

5   not have the authority to foreclose by advertisement on Plaintiffs' property.

6          HSBC could not attempt to enforce the note nor could it obtain any payment on the loans

7   on its own behalf or on behalf of the "Lender" Option One.

8          HSBC was not referred to in any way in the note.

9          The only interest HSBC could have had would have been in the Property through the

10  Assignment of Mortgage -- IF the assignment is valid.

11         Given that the notes and mortgages are separate documents, evidencing separate

12  obligations and interests, whatever interest HSBC had in the mortgage -- which is none -- did not

13  give it an interest in the debt.

14         The statute does not merely require an "interest" in the debt, but rather that the

15  foreclosing party *own* that interest.

16         As noted above, to own means "to have good legal title; to hold as property; to have a

17  legal or rightful title to." None of these terms describes HSBC's relationship to the note.

18         HSBC cannot foreclose where the statute prohibits HSBC from being entitled to take

19  such an action.

20         HSBC stands to benefit if the debt was not paid—it stands to become the owner of the

21  property.

22         HSBC had no right to possess the debt, or the money paid on it. Likewise, it had no right

23  to use or convey the note. Its only "right to possess" was to possess the property if and when

1   foreclosure occurred.

2       Had the owner of the Note (or Lender) decided to forgive the debt in the note, HSBC

3   would have had no recourse.  It could not have sued the lender for some financial loss.

4       HSBC owned no financial interest in the note.

5       As a matter of fact, HSBC admitted that it "is not affiliated with Option One" and "was

6   not a party to originating the terms of this loan." (Exhibit 1)

7       Indeed, HSBC is wholly without legal or rightful title to the debt, and there are no

8   circumstances under which it is entitled to receive any payments on the note.

9       In a letter to Plaintiffs, HSBC told Plaintiffs that they "have no personal obligation under

10  the note." (Exhibit 1)

11      As a result, since the Plaintiffs' debt was discharged in bankruptcy, HSBC has no

12  recourse. HSBC has not incurred any financial loss.

13      HSBC does not have the authority to take action (to foreclose) where the statute prohibits

14  it.

15      In the same context, the Courts cannot grant HSBC the authority to foreclose where the

16  Legislature has statutorily forbidden.

17      Where the Legislature has limited the availability to take action to a specified group of

18  individuals, parties or courts cannot grant an entity that falls outside that group the authority to

19  take such actions. Here, the Legislature specifically requires ownership of an interest in the note

20  before permitting foreclosure by advertisement.

21      HSBC does not own the note.

22      "The flip side of separating the note from the mortgage is that it can slow the mechanism

23  of foreclosure by requiring judicial action rather than allowing foreclosure by advertisement."

1    State of Michigan Court of Appeals, Case Nos. 290248 and 291443, April 21, 2011.

2         Since the Note and Mortgage were separated in this case, especially that the Note has

3    been discharged and only the mortgage was assigned (Exhibits 3 and 8), HSBC cannot lawfully

4    foreclose by advertisement.  HSBC was required to initiate a judicial action -- if it had a valid

5    mortgage assignment, which it does not have.

6                    **C.    ASSIGNMENT OF MORTGAGE IS NOT VALID**

7         HSBC claims that it purchased the "loan on the secondary market."

8
9         Generally, a mortgage loan consists of a promissory note and security instrument, usually
10        a mortgage or a deed of trust, which secures payment on the note by giving the lender the
11        ability to foreclose on the property. Typically, the same person holds both the note and
12        deed of trust. In the event that the note and the deed of trust are split, the note, as a
13        practical matter becomes unsecured. The practical effect of splitting the deed of trust
14        from the promissory note is to make it impossible for the holder of the note to foreclose,
15        unless the holder of the deed of trust is the agent of the holder of the note. Without the
16        agency relationship, the person holding only the note lacks the power to foreclose in the
17        event of default. ***The person holding only the deed of trust will never experience default***
18        because only the holder of the note is entitled to payment of the underlying obligation.
19        The mortgage loan [becomes] ineffectual when the note holder [does] not also hold the
20        deed of trust.[6]
21
22   There is no evidence on record that HSBC has a legal share, title, or right in the Note.

23   Exhibit 3 is an assignment of Mortgage.

24   Exhibit 8 is an assignment of mortgage.

25   Regarding assignments:

26        When the holder of the promissory note assigns or transfers the note, the deed of trust is
27        also transferred. ***An assignment of the deed of trust separate from the note has no***
28        ***"force."*** Effectively, the note and the deed of trust are inseparable, and when the
29        promissory note is transferred, it vests in the transferee "all the interest, rights, powers
30        and security conferred by the deed of trust upon the beneficiary therein and the payee in
31        the notes."[7]
32
33        Thus, if the note is properly assigned, the deed of trust automatically goes with it, and the

_____

[6] See *Restatement (Third) of Property (Mortgages)*, § 5.4 Comment.

1  note is not split from the deed of trust. However, that is not necessarily the case *when it is the*

2  *deed of trust which is assigned – if the note is not also assigned, the assignment of the deed of*

3  *trust is, for all practical purposes, ineffectual* because the note and deed of trust have become

4  split.[8]

5      In the present case, the only assignment that exists is the assignment of the mortgage

6  (Exhibits 3 and 8).  These assignments were invalid.  But even if they were valid, the assignment

7  of the mortgage separate from the note is "*for all practical purposes, ineffectual*" and has no

8  "force."

9      In the present case, the assignment of mortgage to HSBC has neither force nor effect by

10  itself.

11      Therefore, HSBC has no foreclosure authority and its foreclosure of property is a

12  fraudulent conversion of title to property.

13              **D.     STATUTE OF FRAUD**

14      In a letter to Plaintiffs, HSBC claimed "we have a valid contract with you." (Exhibit 1)

15      There is no contract between Plaintiffs and HSBC.

16      HSBC claims to have an assignment of a mortgage.

17      Said assignment has been proven herein to be invalid.

18      Furthermore, the assignment is invalid because it was executed after Plaintiffs had

19  already recorded Exhibits 5, 6, and 7. Plaintiffs consider these recorded documents to have valid

20  legal effect.

21      Due to these documents' legality, all Defendant HSBC's foreclosure action has no force

22  since Defendant has no valid power to act -- since its assignment was obtained after the date of

---

[7] U.S. Bankruptcy Court for the Western District of Missouri, *In Re Box*, case No. 10-20086.

[8] U.S. Bankruptcy Court for the Western District of Missouri, *In Re Box*, case No. 10-20086.

1  default and the removal/rescinding of the parties to the mortgage and Note.

2  The assignments of mortgage has no force without the ownership of the Note. Defendant

3  HSBC never claimed or proved to be the owner of the note. Thus its foreclosure is fraudulent.

4  ### E.   UNCONSCIONABILITY

5  If the Court wishes to consider the assignment of the mortgage to be valid, then the Court

6  would have to also consider that such a mortgage was unconscionable.

7  The Mortgage does not contain any provision which proves that Defendant HSBC or

8  Lender Option One promised to provide or actually provided any money to Plaintiffs.

9  Plaintiffs assert that the Note, Rider, and Mortgage related to the Property were

10  unconscionable pursuant to Restatement (Second) of Contracts §208.

11  There is a gross disparity in the values exchanged See §§79, 364.

12  Such a disparity may also corroborate indications of defects in the bargaining process.

13  Plaintiffs assert that the Note, Rider, and Mortgage -- taken as a whole -- are oppressive

14  and imbalanced.

15  The Note, Rider, and Mortgage are written in a manner to Protect Lender's interests

16  against various contingencies and none giving analogous protection to Plaintiffs -- or at least

17  Plaintiffs.

18  There is unrestricted discretion to Lender.

19  Furthermore, the gross inequality of bargaining power, together with terms unreasonably

20  favorable to Lender, indicate that the transaction involved elements of deception or compulsion,

21  and shows that the weaker party (Plaintiffs) had no meaningful choice, no real alternative, or did

22  not in fact assent or appear to assent to the unfair terms.

23

1    In summary, the Note, Rider, and Mortgage as a whole were unconscionable when made.

2            **F.**     **LACK OF VALID CONSIDERATION OR DAMAGES**

3    No valid contractual rights exist without a valid consideration.

4    Pursuant to Exhibit 8, HSBC paid one dollar as a consideration for the mortgage.  Any

5    claim by HSBC must be equal to the amount of its consideration -- which is one dollar.

6    There is no evidence on record of any damages suffered by HSBC other than the one

7    dollar.

8    HSBC cannot lawfully collect more than what it has incurred: one dollar.

9    There is no evidence that HSBC would have incurred a loss of its own money beyond the

10   one dollar if the alleged debt was not paid.

11   There is not even evidence to prove that HSBC paid one dollar to MERS.

12   MERS has not granted HSBC any rights which it does not have.

13   There is no evidence on record of damages to HSBC or MERS caused by Plaintiffs.

14

15           **G.**     **LACK OF GOOD FAITH AND FAIR DEALING**

16   Pursuant to Restatement (Second) of Contracts §205, **"Every contract imposes upon**

17   **each party a duty of good faith and fair dealing in its performance and its enforcement."**

18   Good faith performance or enforcement of a contract emphasizes faithfulness to an

19   agreed common purpose and consistency with the justified expectations of the other party; it

20   excludes a variety of types of conduct characterized as involving "bad faith" because they violate

21   community standards of decency, fairness or reasonableness.

22   There is no contract between Plaintiffs and HSBC.

23   HSBC wants to take advantage of contracts between Plaintiffs and the original lender

1    Option One (without entitlement to do so) -- while it refuses to take responsibility for the

2    liabilities of those contracts.

3           The reason for such double standard is clear: HSBC never properly acquired the rights of

4    original Lender.  Its foreclosure is nothing more than a fraudulent conversion of title to property.

5                    **H.    HSBC VIOLATION OF 16 CFR 433.2**

6           HSBC claims that it had no involvement with the origination of the loan and cannot be

7    liable for discrepancies related to the loan's origination.

8           Pursuant to 16 CFR 433.2,

9
10
11
12
    In connection with any sale or lease of goods or services to consumers, in or affecting commerce as commerce is defined in the Federal Trade Commission Act, ***it is an unfair or deceptive act or practice*** within the meaning of section 5 of that Act for a seller, directly or indirectly, to:

13
14
15
16
17
18
19
20
21
    (a) Take or receive a consumer credit ***contract which fails to contain the following*** provision in at least ten point, bold face, type: NOTICE ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS ***SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER*** OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

22
23
    or,

24
25
26
27
28
29
30
31
32
33
    (b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type: NOTICE ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

34           Even if HSBC considers itself not to be the originator of the loan, HSBC is still liable to

35    all defenses that Plaintiffs could assert against the originator of the loan pursuant to 16 CFR

36    433.2.

1  Even if HSBC did not make the misrepresentations or omissions alleged by Plaintiffs,

2  HSBC is still liable on these misrepresentations or omissions pursuant to 16 CFR 433.2.

3  If the "mortgage" allegedly assigned to HSBC does not have this provision required by

4  16 CFR 433.2, then HSBC would be liable for an unfair and deceptive act or practice.

5  If the "mortgage" does have this provision, then HSBC would not qualify as a holder in

6  due course because it would have taken the instrument with notice that Borrower could assert

7  "all claims and defenses" against it -- and thus failing the requirements of §440.3302(b).

8  Plaintiffs move the Court to take a judicial notice and clarify (1) whether HSBC is or is

9  not a holder in due course; (2) whether the provision required by 16 CFR 433.2 is part of the

10  "mortgage" which the court claims to have been purchased by HSBC, and (3) what is the

11  consideration that HSBC paid for that purchase.

12  ## I.      FRAUD AND MISREPRESENTATION

13  Plaintiffs are only required to prove "concealment or misrepresentation" conduct by the

14  Defendants.

15  "The concealment or misrepresentation policy defense is a specie of fraud." Court of

16  Appeals, Division One, American v. Federal, Case No. 1 CA-CV 00-0549; 2003.

17  The concealment is clear -- HSBC has concealed from Plaintiffs and the Court the true

18  identity of the owner of the Note.

19  The misrepresentation is clear -- HSBC is portraying that it is entitled to foreclose based

20  on its purchase of the loan, based on an invalid assignment.  The law does noT authorize HSBC

21  to foreclose simply because it has a mortgage assignment.

22  In order for a party to own an interest in the indebtedness, it must have a legal share, title,

23  or right in the note.

1    HSBC does not have a legal share, title, or right in the note.

2    HSBC's misrepresentation by portraying itself to be entitled to foreclose is material

3    because it is aimed at fraudulently depriving Plaintiffs of their property.

4    Defendant clearly has a purposeful attempt to deceive Plaintiffs and to commit fraud

5    upon the Court in order to receive a benefit to themselves -- the sale and ownership of Plaintiffs'

6    property.

7    Defendant's reputation is clearly one of dishonesty.

8    Furthermore, Option One's transfer of the mortgage, and MERS's transfer of the

9    Mortgage were fraudulent transactions aimed at conveying the impression that the transferee is

10   acquiring a right to foreclose -- where the law and the facts prove otherwise.

11

12   ## J.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

13   HSBC is not entitled to foreclose because it does not own the debt or the Note. It simply

14   alleges an assignment to the Mortgage -- which has been proven to be invalid.

15   Based on this undisputed fact, while it is not entitled to foreclose, HSBC's foreclosure

16   attempt is an extreme and outrageous conduct.

17   The Court's ruling in HSBC's favor is another extreme and outrageous conduct.

18   HSBC's conduct is certainly intentional to fraudulently convert title to property. The

19   Court's conduct is reckless for failing to distinguish between assignment of mortgage and

20   ownership of the Note.

21   Both HSBC's conduct and the Court's unjust rulings have inflicted severe emotional

22   distress upon the Plaintiffs.  The lawyers and judges involved in this case would also suffer

23   severe emotional distress if their property is being threatened to be foreclosed while the

1    foreclosing entity is not entitled to do so.

2        The mortgage, by itself, does not provide HSBC with any lawful rights or authority to

3    foreclose.

4                    **K.    CONSTITUTIONAL VIOLATIONS**

5        Plaintiffs allege that HSBC could not possibly have acted in good faith within the

6    meaning of Michigan Statutory or Common Law.

7        Plaintiffs allege that HSBC engages in a pattern and practice of utilizing the foreclosure

8    procedures of this State to foreclose on Property when it does not, in fact, have the right to do so,

9    thinking that the Property owners affected may not have the knowledge and means to contest the

10   right of HSBC to do so.

11       Michigan law does not afford any legal immunity or protection to fraudulent devices in

12   mortgage foreclosure.

13       This Court should protect fundamental and procedural rights of the people to due process

14   protection of law in conformity with the law and constitutions of both the State and the Federal

15   Governments.

16       It is a custom, practice, and policy of the Courts to permit suits which constitute both

17   unconstitutional deprivations of property without due process of law and also impairments on the

18   obligations of contract.

19

20                **L.    FAILURE TO COMPLY WITH 12 U.S.C. 1701x(c) (5)**

21       Plaintiffs state that Defendants failed to comply with the federal statutory requirement

22   that they provide notice of specific homeownership counseling within 45 days after any default

23   in payment. *See* 12 USC 1701x(c) (5).

1       The application of 12 USC 1701x(c) (5) is not limited to federally insured mortgages.

2       The U.S. Department of Housing and Urban Development (HUD) has determined that 12

3   USC 1701x(c) (5) creates an affirmative legal duty on the part of the Defendants.

4       Defendants' noncompliance with the statutory requirement may not be a condition

5   precedent to foreclosure, but it does create an equitable affirmative defense.

6       It is a equitable defense that Defendants failed to comply with HUD regulations requiring

7   of them to make substantial efforts to try to rectify borrower defaults by assisting them in various

8   ways.

9       Defendant's noncompliance with this federal requirement is a genuine issue that

10  precludes Defendant's entitlement to foreclose.

11

12                      **M.      VIOLATION OF 15 USC 1692**

13      Plaintiffs requested of Option One and HSBC to validate the alleged debt. (Exhibit 4)

14      They failed to validate the debt or respond to meaningful communication from Plaintiffs

15  (Exhibit 4) -- while HSBC still insists on foreclosing and have currently scheduled a foreclosure

16  sale for November 18, 2011.

17      If a debt cannot be validated by a creditor, it is unenforceable and the creditor must cease

18  and desist all collection activities pursuant to Title 15, § 1692(g). A notice by the debtor that the

19  debt is being disputed is all that is needed to compel the creditor to stop collecting the debt until

20  debt validation has been completed. See Clarks Jeweler's v. Humble, 823 P 2d 818, 16 Kan App

21  2d 366 (1991).

22      Plaintiffs did dispute the debt (Exhibit 4).

23      As a result, no foreclosure sale should take place because no validation has been

1   completed.

2        Defendant is in violation of 15 USC 1692 Fair Debt Collection Practices Act and state

3   consumer protection laws.

4        Plaintiffs move the Court to award them triple damages.

5
6        **N.    THE CONFESSION OF JUDGE LUDINGTON TO HSBC'S LACK OF**
7                                    **INTEREST**
8
9        In his 9/28/2011 order, Judge Ludington stated that "HSBC was not involved with the

10  origination of Plaintiffs' mortgage."

11       Judge Ludington also stated that "HSBC purchased Plaintiffs' mortgage."

12       Pursuant to the Plaintiffs' Mortgage (Liber 2341, Page 201), "Lender" is Option One

13  Mortgage Corporation.

14       Pursuant to the Mortgage, Borrower (defined in the Mortgage as the Plaintiffs herein)

15  owe "Lender" $182,000.

16       HSBC is not "Lender."

17       HSBC and the Court never presented admissible evidence to prove that Borrower owe

18  HSBC anything or that HSBC advanced Plaintiffs any amount of money.

19       Pursuant to the Mortgage,

20       "This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by
21       the Note . . ., (b) the payment of all other sums . . . advanced . . . to protect the security of
22       this Security Instrument; and (c) the performance of Borrower's covenants and
23       agreements under this Security Instrument and the Note.  For this purpose, Borrower does
24       hereby mortgage, warrant, grant and convey to Lender, with power of sale, the following
25       described property . . ."
26

27       Pursuant to the Mortgage, the Mortgage "secures to Lender" -- not to HSBC or anyone

28  else.

1    The criteria to justify the exercise of the power of sale were not met prior to HSBC's

2  attempt to foreclose Plaintiffs' Mortgage.

3    Firstly, the "debt evidenced by the Note" has been paid.  If it is true that HSBC purchased

4  the loan, then "Lender" was paid and the lien created by the Mortgage has been extinguished.

5    The doctrine of subrogation does not apply to mere volunteers who have paid the "debt"

6  of another.  HSBC was a volunteer.  Even if an alleged debt does exist, such a debt cannot be

7  satisfied with a foreclosure because there is no lien in favor of HSBC against Plaintiff's property.

8    Secondly, HSBC never advanced the Plaintiffs' any money.  Neither the Court nor HSBC

9  has proven otherwise.

10    Thirdly, neither HSBC nor the Court explained what "covenants and agreements"

11  Plaintiffs failed to comply with under the Mortgage -- especially when HSBC is not a party to

12  the Mortgage.

13    WHEREFORE, Plaintiffs move the Court to find that HSBC lack any interest in the Note,

14  Mortgage, or property; that HSBC is not justified to exercise the power of sale under the

15  Mortgage; or in the alternative to provide the admissible evidence which would prove otherwise.

16

17                    **O.    THE ALLEGATION OF FRAUD**

18    In its Order, the Court stated that fraud must be stated "with particularity."

19  Plaintiffs' pleadings did state fraud with particularity.

20    Plaintiffs stated with particularity the disqualification of Magistrate Judge Charles E.

21  Binder.

22    Plaintiffs stated with particularity that "HSBC does not have any contractual right to

23  foreclose."  HSBC and the Court never proved otherwise.

1       Plaintiffs stated with particularity that the assignment of the mortgage separate from the

2   note is "*for all practical purposes, ineffectual*" and has no "force."   Neither HSBC nor the Court

3   proved a valid assignment of the Note and Mortgage to HSBC.   Neither HSBC nor the Court

4   submitted a valid chain of title.

5       Plaintiffs stated with particularity that HSBC has not suffered any damages caused by the

6   Plaintiffs, and that there is no evidence on record of damages.   HSBC and the Court never

7   presented any admissible evidence to prove otherwise.

8          **P.**   **NEGLIGENCE AND NEGLIGENCE PER SE**

9       A prima facie claim for negligence consists of four elements: (1) duty; (2) breach; (3)

10   causation; and (4) damages.

11       Although sometimes pled as such, negligence per se is not a separate cause of action but

12   a doctrine whereby the floor of the duty of care is set as a matter of law, removing from the fact-

13   finder the "reasonable person" determination and leaving to the fact-finder only a determination

14   of causation and damages, in cases where: (1) a plaintiff can show that a defendant has violated a

15   duty imposed onto him by a criminal or regulatory statute; (2) the plaintiff is a member of the

16   class of persons intended to be protected by the statute or regulation; and (3) the alleged harm is

17   of the kind intended to be prevented by statute.  See Restatement (Second) of Torts § 286.

18       Only regulations governing foreclosures create duties giving rise to a negligence claim in

19   the foreclosure context.

20       Plaintiffs assert that Defendant was negligent in its professional duties and breached

21   duties created by statute.

22       Michigan's statutes specifically governing foreclosure are set forth in MCL 600.3204, et

23   al.

1         These statutes set the floor of the duty of care for a foreclosing entity -- such as HSBC.

2         Since HSBC is not the original mortgagee, it is a necessity to establish the validity of any

3 claim it makes to foreclose.

4         The original Mortgage does not include HSBC's name in it.

5         Because HSBC is not mortgagee and lacks a valid assignment, then HSBC is liable for

6 Negligence in foreclosure.

7         There is no admissible evidence to prove that HSBC is a valid beneficiary.

8         HSBC never proved the existence of default.

9         Plaintiffs deny being in default to HSBC.

10         Therefore, HSBC is not a valid beneficiary with the standing, entitlement, or option to

11 foreclose.

12         WHEREFORE, the Court abused its discretion by failing to find HSBC liable for

13 Negligence and Negligence per se.

14

15         **Q.      FRAUD AND INTENTIONAL MISREPRESENTATION**

16         HSBC made knowingly false representations intending to induce reliance such as:

17         1.      That HSBC has a "contractual right to foreclose."

18         2.      Defendant's pleadings and arguments implied as if they are entitled to assert

19 certain rights under the Mortgage -- when in reality HSBC's name is not found in the Mortgage

20 and HSBC lacks a valid assignment to the Note and Mortgage.

21         Defendant made these statements while there is no admissible evidence to prove that

22 HSBC is a valid beneficiary.

23         Despite this lack of admissible evidence, Defendant HSBC claimed, in official court

1   filings and documents filed in the public records and sent to the Plaintiffs herein through the

2   mails, to be the beneficiary and to have "contractual rights to foreclose" for purposes of

3   attempting to justify legal entitlement to institute foreclosure proceedings, doing so based upon

4   nothing more than invalid assignments of Mortgage -- without any proof of transfer of the Note,

5   without any proof of damages, without any proof of consideration paid.

6        In no instance has Defendant HSBC supported the allegation of "contractual rights to

7   foreclose"[9] with any admissible evidence or other proof that Defendant HSBC legally acquired

8   the full and unencumbered interest in either the Note or the Mortgage.

9        Therefore, HSBC is not entitled to any interest in the Mortgage and the Note.

10       HSBC is engaged in a pattern of falsely misrepresenting its "contractual rights" to

11  conduct fraudulent foreclosure with the intent to steal a real property from the owners/Plaintiffs

12  herein.

13       WHEREFORE, the Court abused its discretion when it failed to find Defendant guilty of

14  fraud and intentional misrepresentation.

15       **R.    MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

16       The Court falsely claims that Plaintiffs did not provide the Court with their proposed

17  Amended Complaint.  However, Plaintiffs still have a court-stamped STAPLED copy of what

18  they filed in court which included a Motion for Leave and the Amended Complaint all stapled

19  together as a one document.

20       Plaintiffs are willing to present such an original document into evidence.

21       The Court's denial of the Motion for Leave without providing the Plaintiffs with an

22  opportunity to clarify or explain the status of their filing indicate a vindictive attitude on the part

23  of the court aimed at punishing the Plaintiffs -- especially when the Court prohibited the

1    Plaintiffs from filing any future actions.

2    Plaintiffs did file an Amended Complaint attached to the Motion for Leave.

3    Plaintiffs accuse the Court of obstruction of justice and tampering with court filings.

4

5                              **S.      THE COMMON LAW LIEN**

6    The Court defined that a common law lien is the right of detention in persons "who have

7    bestowed labor upon an article."

8    The Plaintiffs invested labor, time, and effort, monthly payments, repairs, etc. into the

9    Property subject to this litigation.

10    Plaintiffs are entitled to impose have a common law lien top preserve their interest in

11    property.

12    Neither the Court nor Defendant proved the lack of "labor" invested by Plaintiffs in

13    property.

14    The Court stated that "one cannot have a lien against his own property."

15    If the Court is acquiescing that the property is Plaintiffs' property, then it did not explain

16    the reason HSBC was allowed to conduct a foreclosure proceeding.

17

18                              **T.      HSBC's foreclosure is Unlawful**

19    There is no reference whatsoever to any fact that HSBC is the owner of the indebtedness

20    or meets the requirements of MCL600.3204.

21    HSBC allegedly acquired the mortgage through an "Assignment of Mortgage" [Exhibit

22    8] signed by a so-called "Maria Vadney" on behalf of MERS.

23    In addition to arguments made by Plaintiffs in previous pleadings to the invalidity of such

---

[9] Document #30, page 4, April 26, 2011

1    an assignment, MERS had no authority under the mortgage or state law to assign a mortgage.[10]

2          A Michigan appellate court invalidated a non-judicial sale conducted under the state's

3    foreclosure by advertisement statute because the foreclosing party lacked authority to proceed

4    under the law.[11]

5          The pertinent section of the Michigan statute requires the foreclosing entity be "either the

6    owner of the indebtedness or of an interest in the indebtedness secured by the mortgage."[12]

7          The appellate court concluded that MERS never has an ownership interest in the debt

8    secured by a mortgage.   Therefore, it could not conduct a valid sale under Michigan's

9    foreclosure by advertisement statute.  The court appropriately noted that the requirement that the

10    sale be conducted by a party with an ownership interest in the indebtedness must be read

11    consistently with the UCC terminology defining who is entitled to enforce a negotiable

12    instrument.[13]

13          Instead of copying all the relevant arguments, Plaintiffs incorporate herein by reference

14    the arguments made by a Michigan Court in *Hendricks v. US Bank* (case no. 10-849-CH) in

15    which the court stated that "MERS could not attempt to enforce the notes nor could it obtain any

16    payment on the loans on its own behalf or on behalf of the lender." (Exhibit 10)

17          As a result, MERS cannot assign any rights more than what it has.  If MERS lacked

18    authority to enforce the notes, it cannot assign that authority to HSBC.

19          By applying the Michigan appellate court arguments to this case, HSBC never acquired

20    any lawful authority to foreclose by the assignment from MERS.

---

[10] In re Doble, 2011 WL 1465559 (Bankr. S.D. Cal.; April 14, 2011) at 6-8.

[11] Residential Funding Co., LLC v. Saurman, 2011 WL 1516819 (Mich. Ct. App., April 21, 2011)

[12] Mich. Comp. Laws §600.3204(1)(d).

[13] Residential Funding Co., LLC v. Saurman, 2011 WL 1516819 (referring to Mich. Comp. Law §440.3602(
UCC 3-602)), which requires that payment due on a negotiable instrument be made to a "person entitled to enforce
the instrument" and noting that MERS does not meet the requirements to be any of the entities defined in UCC§3-

HSBC's attorney's mention of HSBC's "lawful foreclosure" constitute an unsubstantiated claim, that has never been verified by HSBC's attorney. It could also be a fraudulent claim aimed at committing fraud upon the court in a clear attempt to unlawfully convert title to Plaintiffs' property.

## U.    THE BIAS OF JUDGE LUDINGTON

The Court's order reflected a clear indication of bias and vindictiveness against Plaintiffs when it denied everything against Plaintiffs and never once critically analyzed a single sentence made by the Defendant.

In his biased order, and by enjoining the Plaintiffs from filing any further actions without any valid reason, Judge Thomas L. Ludington violated 18 U.S.C. Section 241 by committing the crime of conspiracy against rights by depriving the Plaintiffs of their First Amendment right to petition the government for redress of grievances, of the Fourteenth Amendment right to due process, and the Fifth Amendment right to not be deprived of life, liberty or property without due process of law.

Judge Thomas L. Ludington conspired in the violated of RICO, 18 USC Section 1960, et seq., 18 USC Section 1962(c) and (d) which make it unlawful to engage in the "collection of unlawful debt."

There is no admissible evidence on record to prove that the debt alleged by HSBC is lawful.

There is no admissible evidence on record to prove that HSBC has a valid perfected lien on the foreclosed mortgage or property.

Furthermore, Judge Ludington failed to report to judicial and other authorities the un-

301 as entitled to enforce a negotiable instrument.

1    qualification of the Magistrate Judge who issued his Order of 4/19/2011.  Pursuant to 28 U.S.C.

2    §631(c), "A magistrate judge may hold no other civil or military office or employment under the

3    United States."  Based on an Internet research, Plaintiffs discovered that Magistrate Judge

4    Charles E. Binder, who issued the report and recommendation in this case, is a Faculty Member

5    in the Department of Law, United States Air Force Academy.  Having another employment

6    under the United States renders the Magistrate judge unqualified to hold the Magistrate position.

7            By failing to file a timely answer to Plaintiffs' assertions, both the Magistrate Judge and

8    Judge Ludington consented to the Magistrate's disqualification.

9            By failing to report the Magistrate's misconduct, Judge Ludington undermined the

10   integrity and impartiality of the judiciary.  Also, Judge Ludington failed to disclose on the record

11   information that is reasonably relevant to the question of disqualification.

12           Judge Ludington failed to promote the integrity of the judiciary and failed to further the

13   interests of justice.

14           The Code of Judicial Ethics requires that a judge shall respect and comply with the law.

15           Facts presented herein prove that Judge Ludington failed to do so in this case.

16           The judge obstructed justice and is required to recuse himself, and his order is void and

17   should be vacated.

18           In *Caperton v. A.T. Massey Coal Co., Inc.* (2009) 129 S. Ct. 2252 at 2259, the Supreme

19   Court said: "It is axiomatic that a "fair trial in a fair tribunal is a basic requirement of due

20   process."

21           From the facts presented in this case, it is evident that Plaintiffs have not received a fair

22   opportunity for a fair trial.  Judge Ludington did not even offer pro se Plaintiffs an opportunity to

23   file an Amended Complaint.

1        **Pursuant to 28 USC 453, a judge takes an oath to "administer justice" and "do equal**

2     **right to the poor and to the rich . . . under the Constitution and laws of the United States."**

3        Based on the report by the Magistrate Judge and the court's order, Plaintiffs do not

4     believe that justice is being properly administered.  Plaintiffs do not consider that there is equal

5     rights to the parties.

6        Not a single sentence made by HSBC was properly scrutinized by the Court.

7        This court's rulings are biased.

8        Being biased, the Court's order is void and should be vacated.

9

10                                  **TRIAL-BY-JURY**

11        Plaintiffs demand a trial-by-jury of all issues of fact so triable, and all mixed questions of

12     law and fact which may be triable as a matter of controlling case law.

13        Plaintiffs demand an advisory jury on all other matters to the extent permitted by law,

14     with appropriate instructions distinguishing the advisory from the deciding issues presented to

15     the jury for resolution.

16                                **CONCLUSION**

17        Plaintiffs are entitled to a permanent injunction and are entitled for relief on the merits IF,

18     a big if, the Court is honest and takes the facts as they are and analyze the law and facts in a fair

19     manner.

20        In the absence of fairness, no amount of arguments would be sufficient.

21        HSBC lacks standing and entitlement to foreclose.

22        Plaintiffs are entitled to judgment as a matter of law because, pursuant to MCL

23     600.3204(1)(d), HSBC did not own the indebtedness, or an interest in the indebtedness secured

1    by the mortgage, or service the mortgage.

2          HSBC's inability to comply with the statutory requirements rendered the foreclosure

3    proceeding void *ab initio*.

4          "Court errs if court dismisses pro se litigant without instructions of how pleadings are

5    deficient and how to repair pleadings." *Plaskey v CIA*, 953 F .2nd 25.

6          "The trial judge should inform a pro se litigant of the proper procedure for the action he

7    or she is obviously attempting to accomplish." *Breck v. Ulmer*, 745 P.2d 66, 75 (1987).

8          Plaintiffs move the Court to take judicial notice of the requirements that a foreclosing

9    party has to meet and whether HSBC met those requirements in this case.

10         WHEREFORE Plaintiffs Joseph J. Coyer and Janet M. Coyer move the Court to issue a

11    temporary restraining order to stop the foreclosure sale scheduled for November 18, 2011.

12         Plaintiffs move the Court to forever enjoin HSBC from foreclosing on Property, to grant

13    Plaintiffs  a Quiet Title and damages arising from fraud and slander of title inflicted by

14    Defendant -- all relating to the Plaintiff's real estate located at:  878 East Prevo Road,

15    Pinconning, Michigan 48650.

16         WHEREFORE, Plaintiffs move the Court to take judicial notice of the facts in Plaintiffs'

17    favor which the Court ignored and to reconsider its Order of September 28, 2011.

18         WHEREFORE, in light of all the above, Plaintiffs move the court and pray for relief as

19    follows:

20         That Judge Ludington failed to construe Plaintiffs' complaint in the light most favorable

21    to the Plaintiffs;

22         That this court orders that Judge Ludington is disqualified from any longer presiding on

23    this case;

That this Court find that Judge Ludington and the Magistrate Judge had both violated the

Code of Judicial Ethics;

That this court issue a Writ of Mandate directing the District Attorney, Attorney General,

and the U.S. Attorney to investigate the facts set forth herein and prosecute any person found to

have violated any laws.

DATED:        October 20, 2011

Respectfully submitted,


Joseph J. Coyer                                Janet M. Coyer
878 East Prevo Road                            878 East Prevo Road
Pinconning, MI  48650                          Pinconning, MI  48650


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was sent to the following by
regular U.S. Mail, postage prepaid, on this 20th day of October, 2011:


              Jennifer L. Newby, Esq.
              Francis R. Ortiz, Esq.
              **Dickinson Wright PLLC**
              500 Woodward Avenue
              Suite 4000
              Detroit, Michigan 48226


Respectfully submitted,


Joseph J. Coyer